**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Thomas P. SHACKELFORD,**
**Defendant-Appellant.**

**No. 81–2217.**

United States Court of Appeals,
Fifth Circuit.

June 1, 1982.

Roland E. Dahlin, II, Federal Public Defender, Karen K. Brown, Asst. Public Defender, George McCall Secrest, Jr., Houston, Tex., for defendant-appellant.

James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before RUBIN and REAVLEY, Circuit Judges, and HUNTER *, District Judge.

EDWIN F. HUNTER, Jr., District Judge:

Thomas P. Shackelford was charged by indictment with the theft of a Nagra Recorder, the property of the United States, of a value in excess of $2,000, in violation of Title 18 U.S.C. 641.[1]  He was tried by a jury and found guilty.  A sentence of five years

---

* District Judge of the Western District of Louisiana, sitting by designation.

1. Title 18, U.S.C., § 641
   § 641. Public money, property or records.
   Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof;  or

Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—
   Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.
   The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

imprisonment was imposed. This appeal followed.

The major attack is on the sufficiency of the evidence and we conclude that there was adequate basis in the record for the verdict. Because, however, we find that the trial judge erroneously refused to give the substance of one jury instruction requested by the defendant, we reverse the judgment of conviction and remand for a new trial.

This is a tale of cross and double cross. The weaving of this tangled web began in September of 1980, when Nueces County deputy constables, among them one Rick Miller, searched the apartment of Timothy Bielert. Although no arrest was made, seven or eight pounds of marijuana and $1,600 in cash were seized. Miller endeavored to have Bielert cooperate with the police by naming his drug sources; Bielert refused to do so.

The plot thickens. Enter the defendant, Thomas P. Shackelford, a sometime informant for Deputy Miller and an acquaintance of Bielert. Miller requested the assistance of Shackelford in discovering the source of Bielert's supply of marijuana. Shackelford agreed to help. Shackelford contacted Bielert.

Shackelford had good news and bad news for Bielert. The bad news was that Shackelford had seen arrest warrants for Bielert and his wife at the Corpus Christi police station. The good news was that Bielert could "get off the hook" for a price of $500. Shackelford himself testified that this story was entirely the product of his own imagination, designed to gain Bielert's attention in the hope of discovering his marijuana supply.

Upon hearing Shackelford's proposition, Bielert informed him that he would take the matter under advisement. Shackelford's troubles began. Bielert contacted Captain Glorfield from the Corpus Christi Police Department and related the sequence of events. Captain Glorfield referred Bielert to the Federal Bureau of Investigation. Bielert contacted the FBI, and they arranged to obtain the Nagra device and a brief case for use in the investigation, together with $350 in marked bills. Thus equipped, Bielert arranged to meet with Shackelford on the evening of October 20, 1980. The recording device was so arranged that it could be turned on from the outside of the brief case. It was to be activated only in the event of a meeting with Miller. The scheme quickly went awry. Shackelford insisted upon a "pat down" search, according to Bielert's testimony, because "he wanted to search me for wires, see if I am wired, because he didn't want me to bring the FBI in on this." Shackelford opened the brief case, spilling its contents, and pulled back the lining of the brief case, revealing the hidden recorder. When this occurred, Bielert "jumped out of the car and took off running—and jumped the fence." Bielert then called Captain Glorfield and alerted him that the plan had gone awry. The police picked up Bielert and conducted a cursory search the following day. The tape recorder was never discovered.

Defendant argues that his brief contact with the Nagra Recorder never amounted to possession sufficient to constitute theft under the statute, and that Bielert abandoned the recorder when he precipitously left the car without it. The trial judge denied his motion for judgment of acquittal, which was renewed at the close of testimony. Although the trial judge gave the pattern jury instructions of theft,[2] he refused to give the requested instructions on abandonment, because he concluded that there was insufficient evidence to support such a defense. The jury instruction proposed by defendant, and declined by the Court, was to the effect that if the tape recorder allegedly stolen was actually abandoned in the defendant's car by the government's agent, they might then find that the property had in fact been abandoned, and

2. See Fifth Circuit Pattern Jury Instructions, Criminal Cases, Title 18, Offenses, Instruction 8 (West, 1979).

that therefore there was no intent to steal, or that the abandonment of the property did, in effect, constitute a complete defense. We have often held that if there is any evidentiary support whatsoever for a legal defense, and the trial court's attention is specifically directed to that defense, the trial judge commits reversible error by refusing to so charge the jury. *United States v. Goss*, 650 F.2d 1336, 1344 (5th Cir. 1981). In *Goss* the defendants were convicted of mail fraud based on the sale of crude oil residium. They presented evidence that their mailed representations were mailed in good faith, a complete defense to the specific intent requirement for conviction. The trial judge refused to give a good faith instruction, ruling that the charge on specific intent encompassed the defense. This court reversed, finding that the general instruction did not direct the jury's attention to the defense of good faith with sufficient specificity. See *Goss*, 1344–45. If abandonment is a valid defense to 18 U.S.C. 641, and if there is any factual support for that defense in this case, the judge erred in failing to give Shackelford's requested instruction.

■ Abandonment is a defense to a prosecution brought under 18 U.S.C. § 641. *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). In *Morissette*, the defendant discovered some spent bomb casings on government property while on a hunting trip. Hoping to defray the cost of his unsuccessful expedition, Morissette hauled away the casings to sell them for scrap. The Supreme Court held that one of the necessary elements of the crime in question was the intent to deprive the Government of its property, thereby distinguishing the crime from the civil tort of conversion. Therefore, where defendant asserts that he believed the property to be abandoned, proof of this allegation would defeat the requisite intent to knowingly and willfully deprive the Government of the use of such property.[3]

We must determine whether, construing the evidence most favorable to the defense, there was an underlying evidentiary foundation to support the abandonment claim, regardless of how weak or dubious that evidence may have been. On the record presented, we cannot say that there was no evidentiary basis upon which the defendant could rest an abandonment defense.

Under the Court's charge, the jury, in order to convict, had to find that Shackelford stole or converted the property, "knowingly with intent to deprive the owner of the use or benefit" of it. He could not have knowingly converted property which he did not know could be converted, as would be the case if it was in fact abandoned or if he truly believed it to be abandoned. The jury may have considered his testimony that he believed the recorder belonged to Bielert's drug suppliers as being nothing more than an incredible afterthought. But, they might have concluded that under the bizarre circumstances he may have truly believed that the recorder has been abandoned.

■ The Government's position seems to be that no instruction on abandonment was required because Bielert had no power to abandon an expensive recording device, and thus terminate its ownership by the United States. This contention is totally without merit. Specific intent depends upon the state of mind of the defendant, not upon a legal conclusion. Where the intent of the accused is an ingredient of the crime charged, the existence or nonexistence of that intent is a question of fact for the jury. Charging the jury that a finding of specific intent to convert is required for conviction, while it may generally constitute the negative instruction (i.e., that if the defendant acted in good faith he could not have had the intent and knowledge

---

3. "In the case before us, whether the mental element that Congress required be spoken of as knowledge or as intent, would not seem to alter its bearing on guilt. For it is not apparent how Morissette could have knowingly or intentionally converted [property that he did not know could be converted], as would be the case if it was in fact abandoned or if he truly believed it to be abandoned and unwanted property." 342 U.S. at 271, 72 S.Ct. at 254.

required to convict)[4] does not sufficiently direct the jury's attention to the defense of abandonment. The record here contained at least minimally sufficient evidence to raise the issue. We conclude that the trial judge committed reversible error in failing to instruct on abandonment.

Shackelford also argues that his motion for judgment of acquittal should have been granted. We briefly address this issue, despite reversible error in jury instructions, because a defendant cannot be retried if his conviction is reversed on grounds of insufficient evidence. *Burks v. United States*, 437 U.S. 1, 15–16, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1. The standard of review on a sufficiency claim has often been stated. It is:

"The standard for reviewing the sufficiency of the evidence is whether 'there is substantial evidence taking the view most favorable to the government to support it.' *Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Malatesta*, 590 F.2d 1379, 1382 (5th Cir. 1979) (en banc), *cert. denied*, 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59. If, after reviewing the evidence, and inferences that may reasonably be drawn from it, in the light most favorable to the government, it appears that a reasonable-minded jury must necessarily have entertained a reasonable doubt as to the appellant's guilt or, alternatively, any essential element of the crime, the convictions must be reversed. *United States v. Forrest*, 620 F.2d 446, 450 (5th Cir. 1980); . . ." *United States v. Bland*, 653 F.2d 989 (5th Cir. 1981).

Defendant's own testimony establishes a complete civil conversion of the recording device, before the hasty departure of Bielert. The only remaining element to turn this tortious conversion into the crime pro-

scribed by 18 U.S.C. § 641 was that of knowledge and intent. This the jury was entitled to find (in the absence of an abandonment instruction), not only from the act of taking possession, but from that, together with all the attendant circumstances. The evidence was not overwhelming, but it was sufficient to allow a reasonable juror, making the credibility choices which are within the jury's province, to conclude that the defendant was indeed "guilty as charged."

Finally, the defendant alleges that the trial court erred in denying his motion for a mistrial where the prosecutor allegedly prejudiced the defendant's case by repeatedly arguing before the jury that a subsequent, extrinsic marijuana offense should be admissible against the defendant as impeachment evidence over the sustained objections of defense counsel. In light of our disposition of this case, we need not determine whether this constituted reversible error. We express our astonishment that the same prosecuting attorney has presented this court with this continuing problem on repeated occasions.[5] Suffice it to say here that the prosecutor, as representative of the government, should at all times maintain the dignity and decorum demanded by his office. Our courts are not to provide a stage for theatrical argument, but instead were created as a forum for the service of the interests of justice by assuring the defendant a fair and impartial trial by a jury of his peers, unswayed by prejudicial comment.

We reverse and remand for the failure of the trial court to instruct the jury as to abandonment.

REVERSED and REMANDED for further proceedings.

---

**4.** *United States v. Goss*, 650 F.2d 1336, 1345 (5th Cir. 1981).

**5.** *United States v. Singleterry*, 646 F.2d 1014 at 1019 (5th Cir. 1981); *United States v. Oken-fuss*, 632 F.2d 483 (5th Cir. 1980); *United States v. Garza*, 608 F.2d 659 (5th Cir. 1979); *United States v. Handly*, 591 F.2d 1125 (5th Cir. 1979).