898 F.2d 148
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert L. MACK, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
MID ATLANTIC CARBONICS, INCORPORATED, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Paul L. SMITH, Defendant-Appellant.
 Nos. 89-5520, 89-5524 and 89-5525.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 2, 1989.
Decided: Feb. 26, 1990.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Newport News. John A. MacKenzie, Senior District Judge. (Cr. No. 88-16-NN)
 Robert Arthur Blount, Robert A. Blount & Associates; Christopher Patrick Shema, Thomas W. Moss, Jr., Moss & Callahan, for appellants.
 Susan Lynn Watt, Office of the United States Attorney, for appellee.
 E.D.Va.
 AFFIRMED.
 Before DONALD RUSSELL and WIDENER, Circuit Judges, and JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Paul L. Smith, Robert L. Mack, and Mid Atlantic Carbonics appeal their convictions on conspiracy, conversion, and mail fraud charges arising out of the sale of cylinders from the Norfolk Naval Supply Center (NNSC) to civilian customers without the permission of the Navy. The cylinders, which are used for the storage of helium, oxygen, and other compressed gases, were stored at a supply shed at NNSC awaiting transfer to the Defense Rehabilitation and Marketing Office (DRMO), also on the base, for repair (after which they would be used by the Navy or sold) or for disposal. Some, but not all, of the cylinders were owned by the Navy; others were commercial or foreign cylinders.[1]
 
 
 2
 The Navy had an excessive amount of the cylinders on the base, and DRMO refused to accept commercial cylinders from NNSC. Rodney Rhodes, who was in charge of the supply shed where the cylinders were stored, had difficulty disposing of the cylinders when DRMO stopped accepting them. A commander on the base instructed Rhodes to get rid of the cylinders in any way possible. Consequently, Rhodes and his assistants, including appellant Smith, began giving the cylinders to anyone who claimed them, regardless of proof of ownership, so long as the cylinders were not marked as government property.
 
 
 3
 William Brown, an independent contractor and truck driver for Cylinder Specialists, Inc., claimed abandoned cylinders from NNSC, which were given to him by Rhodes and Smith. The cylinders were then sold to Gary Moore, president of two cylinder refurbishing companies, Cylinder Specialists, Inc., and Certified Testing Corporation. Patrick G. O'Brien, the vice president of Certified Testing and Cylinder Specialists, served as the go-between in the sale of cylinders from Brown to Moore; O'Brien told Moore that the cylinders were from NNSC. Mack, through Mid Atlantic Carbonics, also bought cylinders from Brown, at one time purchasing 256 cylinders; Mack also bought 202 cylinders from National Welders Supply Company (National) which National had purchased from Cylinder Specialists, which had in turn purchased them from Brown, who purchased them from Smith at NNSC. Another Cylinder Specialists employee, Donald Turner, sold 50 fire extinguisher cylinders and 82 helium cylinders to Mack; those cylinders also came from NNSC via Brown and Smith. Smith, Mack, and Mid Atlantic were convicted of conspiracy to convert government property in violation of 18 U.S.C. Secs. 641 and 2 in connection with this conduct.
 
 
 4
 Mack was also convicted of four counts of converting government property and two counts of mail fraud in connection with the creation of invoices and documentation of ownership which were sent to the insurance company to support a claim for the loss of some of the illegally-obtained cylinders for more than he had paid for them. Finally, Smith was convicted of one count of converting government property. The other counts of the indictment are not at issue in this appeal.
 
 
 5
 The first issue on appeal is whether Paul L. Smith was properly joined as a defendant at trial. Smith contends that because he was only named in two of the counts of the indictment, he should have been tried separately because the jury must have inferred his guilt because of the length of the trial and by association with the other defendants.[2] He further contends that although he was charged with conspiring with Moore and Mack in one of the two counts against him, he was not involved in the mail fraud with which Mack was charged, nor was he involved in the bank fraud with which Moore was charged. Smith moved for severance prior to trial as required by Fed.R.Crim.P. 12(b)(5), but the motion was denied. Defendants may be joined for criminal trial if "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b). Not all of the defendants need to be charged in each count of the indictment for joinder to be proper. Fed.R.Crim.P. 8(b). When a defendant claims, as Smith does here, that joinder was prejudicial, the standard for review is clear abuse of discretion. Fed.R.Crim.P. 14. There was a great deal of evidence that Smith participated in the transfer of unclaimed cylinders and there was some evidence that he was paid for his participation. Smith was charged with participation in the same conspiracy as each of the other defendants, and the conversion charged was a part of that scheme; therefore, the district court did not abuse its discretion by joining him on the conspiracy charge.
 
 
 6
 Next, Smith contends that the prosecutor made misleading statements in her opening statement and closing argument, and that the district court erred in failing to exclude these statements. However, neither Smith nor any of the other defendants objected to the allegedly misleading statements. Therefore, the prosecutor's statements would only provide grounds for relief if failure to exclude them constituted plain error. Fed.R.Crim.P. 52(b). The jury was told that the statements made by counsel were not evidence; further, the statements, which related to fraudulent documentation created to cover the transfer of cylinders from NNSC to Brown, were supported by testimony in the record, particularly the testimony of William Brown and Rodney Rhodes. Therefore, the court did not err in failing to exclude the prosecutor's statements on its own motion.
 
 
 7
 The next issue is whether the cylinders actually constituted a "thing of value of the United States" as required under 18 U.S.C. Sec. 641. The defendants all contend that the cylinders did not belong to the government because they were commercial cylinders, or that they did not have the requisite intent because they believed that the cylinders had been abandoned by the government. The jury was instructed that in order to constitute a violation of Sec. 641, the converted property had to be property of the United States. Although it was not entirely clear that the cylinders were government property, this Court has held that, in order to be a "thing of value" to the United States, ownership is not necessary, but some interest in the property is required. United States v. Benefield, 721 F.2d 128 (4th Cir.1983). In the present case, as in Benefield, the government may have been a fiduciary to the true owners of the cylinders because it earmarked the funds obtained from the sale of the cylinders in case the owners appeared later to claim the cylinders or the proceeds of the sales. Further, the cylinders were a "thing of value" to the government because they could have been sold at auction or for scrap. Therefore, failure to prove government ownership does not taint the conviction.
 
 
 8
 Finally, the defendants contend that the cylinders were abandoned. If the Navy had abandoned the cylinders, or if the defendants believed that the cylinders were abandoned, it is possible that the convictions could be overturned. United States v. Morrissette, 342 U.S. 246 (1952). Because the court did not allow Morrissette to argue abandonment as a defense, the conviction was reversed. Further, the Fifth Circuit reversed a conviction of violation of Sec. 641 because the jury was not instructed on the defense of abandonment, even though the evidence of abandonment was extremely weak. United States v. Shackelford, 677 F.2d 422 (5th Cir.1982), cert. denied, 464 U.S. 899 (1983). In this case, however, the defendants were not prevented from arguing abandonment as a defense. In fact, the defendants conceded at oral argument that they did not request a jury instruction on abandonment. Because the defendants did not request the appropriate instruction, this Court can only reverse the convictions if failure of the district court to give such an instruction sua sponte amounted to plain error. Fed.R.Crim.P. 52(b); Henderson v. Kibbe, 431 U.S. 145, 154 (1977); United States v. Hook, 781 F.2d 1166, 1172-73 (6th Cir.), cert. denied, 479 U.S. 882 (1986). Because the government exercised control over the cylinders and could still sell them or salvage them for scrap metal prior to their conversion, and because the jury was instructed on the element of interest in the property, it was not plain error to fail to give an instruction on abandonment. Therefore, the convictions on the conspiracy and conversion counts are affirmed.
 
 
 9
 Finally, following conviction, defendants moved for judgment of acquittal based on the alleged insufficiency of the evidence of the counts submitted to the jury.[3] Viewing the evidence in the light most favorable to the government, Glasser v. United States, 315 U.S. 60, 80 (1942), we hold that there was sufficient evidence in the record to support the jury's verdict on those counts. Therefore, the convictions on those counts are affirmed.
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 There is no indication in the record as to who owned the cylinders that were not owned by the Navy, except that they were either unclaimed or abandoned, but they were concededly under the Navy's control and supervision which they were at NNSC. The cylinders were transported on military pallets and some of them bore markings consistent with government ownership
 
 
 [2]
 Although the indictment originally contained 32 counts against numerous defendants, guilty pleas were entered on counts one through 21 prior to trial, so only 11 counts were actually tried together. Smith, Moore, Mack, Cylinder Specialists, Certified Testing, and Mid Atlantic were the only defendants at trial. Only Smith, Mack, and Mid Atlantic are parties to this appeal
 
 
 [3]
 Mack does not contend that there was insufficient evidence to go to the jury on the mail fraud counts