**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Cecil Lovell JACKSON,**
**Defendant-Appellant.**

**No. 83–3031X.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 1983.

Decided March 2, 1984.

George Darragh, Jr., Asst. U.S. Atty., Great Falls, Mont., for plaintiff-appellee.

Daniel Donovan, Great Falls, Mont., for defendant-appellant.

Before BROWNING, Chief Judge, HUG and TANG, Circuit Judges.

PER CURIAM:

Jackson appeals his conviction for assault with a dangerous weapon upon a federal officer in violation of 18 U.S.C. § 111.

### I.

Defendant returned to his home in the early morning hours, intoxicated and badly beaten. He took his rifle and told his wife he intended to seek out his attackers. On his way to the nearby home of his brother, he was intercepted by a tribal policeman, Gerald Little Owl, who identified himself as a police officer, and unsuccessfully attempted to stop defendant. Little Owl radioed for help, followed defendant to his brother's house, stopped nearby, and turned on the police lights on top of his vehicle as defendant entered the house.

Inside, defendant sought his brother's assistance in loading the rifle. His brother attempted to persuade the defendant to return home and loaded the bullet clip into the rifle backwards so the rifle would not fire. Defendant removed the clip and left the house.

Meanwhile, a federal agent, Officer Bell, and another officer arrived to assist Little Owl. All three testified they loudly identified themselves as officers while defendant walked in their direction. The officers testified they heard a shot and assumed it was fired by defendant, but could not tell with certainty because the night was dark and illumination from the nearest street light was blocked. They testified they turned a spotlight on the defendant, repeatedly identified themselves, and told defendant to drop his gun.

Defendant's brother came out of his house and asked defendant to drop his gun. Defendant's brother testified he recognized the police vehicles and saw the spotlight trained on defendant but did not hear the officers identify themselves. He did hear the police command defendant to drop the weapon. As he spoke, asking defendant to drop his gun, defendant turned toward him with his gun in the air. As defendant turned, he was shot by Agent Bell.

Bell testified he saw defendant turn, fumble with his rifle and then point the rifle at him, and he fired to protect himself. Defendant fell from the impact of the bullet. Bell ran to subdue him. Defendant was restrained, but struck Bell in the face during the struggle.

Later in the day, an FBI agent questioned defendant in his hospital bed. Defendant admitted he knew police officers were outside his brother's house, heard their requests to drop the rifle, and fired a shot into the air.

An empty bullet casing and an unfired shell were found at the scene the next day. A firearms expert testified that the empty shell had been fired from defendant's rifle.

Defendant did not testify in his own defense. The testimony of defendant's brother and his neighbors conflicted in varying degrees with the officers' presentation of the facts. None heard more than one shot and none heard the police identify themselves.

The jury convicted defendant of assaulting a federal officer with a dangerous weapon. Defendant moved for a new trial based on the court's refusal to give two requested instructions. The motion was denied, and defendant appealed.

## II.

### The Self-Defense Instruction

■ Defendant was entitled to a jury instruction on self-defense if there was evidence in the record to support it. See United States v. Davis, 597 F.2d 1237, 1239 (9th Cir.1979). Although the language of some opinions suggests that the merest scintilla of evidence may suffice, see, e.g., Notaro v. United States, 363 F.2d 169, 174 n. 6 (9th Cir.1966); United States v. Schackelford, 677 F.2d 422, 425 (5th Cir.1982), such a standard would be irreconcilable with the many cases in which this court and others have refused to instruct on a theory of defense despite the presence of some evidence to support it. See United States v. Hernandez, 608 F.2d 741, 750 (9th Cir.1979); United States v. Linn, 438 F.2d 456, 460 (10th Cir.1971); Johnson v. United States, 370 F.2d 495, 496–97 (9th Cir.1966). The better statement of the standard is that an instruction must be given if there is evidence upon which the jury could rationally sustain the defense. United States v. Brandon, 633 F.2d 773, 778 (9th Cir.1980). This standard protects the right of the defendant to have the jury weigh the evidence and the credibility of witnesses when the evidence raises a factual dispute and, at the same time, protects against improper verdicts.

It was the theory of the defense that defendant had no knowledge of the officers' identity and reasonably believed himself subject to a hostile attack and was therefore entitled to use reasonable force to re-

sist that attack. These facts would establish a defense to a prosecution under 18 U.S.C. § 111 and entitle defendant to an instruction if there was evidence to support this theory. United States v. Feola, 420 U.S. 671, 686, 95 S.Ct. 1255, 1264, 43 L.Ed.2d 541 (1975); United States v. Danehy, 680 F.2d 1311, 1315 (11th Cir.1982); United States v. Corrigan, 548 F.2d 879, 883 (10th Cir.1977).

■ The only positive evidence defendant can point to is testimony of neighbors that they heard only one shot and testimony of his brother that the police did not identify themselves in his presence. The possibility that only one shot was fired may affect the officers' credibility but is not otherwise relevant to defendant's knowledge of the officers' status. Accepting the brother's testimony as true, it would not support a conclusion that the officers did not identify themselves at all, but only that they did not do so during the brief time the brother was outside his house. Other witnesses testified they heard no police warnings, but these witnesses also testified they either heard only a gunshot and no voices, or heard voices but could not make out any words. This is not evidence that the officers did not identify themselves. Thus, none of the testimony upon which defendant relies was sufficient to support an inference that the defendant was unaware of the identity of the officers. It therefore afforded no basis for a self-defense instruction.

Defendant's reliance on United States v. Corrigan, 548 F.2d 879 (10th Cir.1977), is misplaced. Corrigan testified he acted in self-defense and presented a version of the incident uncontradicted by the government's evidence. Whether his version was true and sufficient to make out the defense were issues for the jury. Cf. United States v. Danehy, 680 F.2d at 1315 (self-defense instruction proper when defendant testified he did not hear Coast Guard officials identify themselves and other evidence raised an issue of fact whether fear of hostile attack was reasonable).

■ Defendant also argues it was error not to instruct the jury as to the government's burden of proof on the issue of self-defense in light of an instruction given by the court that knowledge of the officers' identity is not an element of the offense but lack of knowledge of the officers' identity might be relevant to "the issue of defendant's asserted reasonable belief in the use of force to protect himself." This instruction, drawn from *United States v. Feola,* 420 U.S. at 686, 95 S.Ct. at 1264–1265, did tend to raise the self-defense issue. Normally, a self-defense instruction must fully explain the government's burden to prove the defendant was not acting in self-defense. *See, e.g., United States v. Corrigan,* 548 F.2d at 882; *Notaro v. United States,* 363 F.2d at 175–76. However, since there was insufficient evidence to support that defense, defendant was not prejudiced by the failure to accompany the instruction by an explanation of the government's burden to disprove the defense. When the trial judge concludes there is insufficient evidence to support a self-defense instruction, however, it would be preferable to restrict the *Feola* instruction to the statement that knowledge of the official status of the victim is not an element of the offense.

### III.

### The Lesser-Included Offense Instruction

The trial judge instructed the jury that it could convict defendant of the lesser-included offense of assault without a dangerous weapon.[1] Defendant's attorney objected to the form of the instruction because the instruction required the jury to unanimously acquit on the greater charge before considering the lesser-included charge. Defendant asked that the jury be told to consider the lesser-included offense if unable after reasonable effort to reach a verdict on the greater offense.

■ We join the Second Circuit in holding that although either formulation may be employed if the defendant expresses no choice, it is error to reject the form timely requested by defendant, *United States v. Tsanas,* 572 F.2d 340, 346 (2d Cir.1978), a question we reserved in *United States v. Harvey,* 701 F.2d 800, 806 (9th Cir.1983). *Cf. Catches v. United States,* 582 F.2d 453, 459 (8th Cir.1978) (approving *Tsanas*).

As Judge Friendly points out, either form may have advantages and disadvantages for the defendant. The danger to the defendant of the charge requiring acquittal of the greater offense before the lesser offense is considered is clear: "If the jury is heavily for conviction on the greater offense, dissenters favoring the lesser may throw in the sponge rather than cause a mistrial that would leave the defendant with no conviction at all, although the jury might have reached sincere and unanimous agreement with respect to the lesser charge." 572 F.2d at 346. For this reason, the court concluded

the court should give the form of instruction which the defendant seasonably elects. It is his liberty that is at stake, and the worst that can happen to the Government under the less rigorous instruction is his readier conviction for a lesser rather than a greater crime. As was said in *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955), albeit in a different context:

It may fairly be said to be a presupposition of our law to resolve doubts in

---

1. The instruction read:

The law permits the jury to find the accused guilty of any lesser offense which is necessarily included in the crime charged in the indictment, whenever such a course is consistent with the facts found by the jury from the evidence in the case, and with the law as given in the instructions of the court.

So, *if the jury should unanimously find the accused "Not Guilty" of the crime charged in the indictment,* then the jury must proceed to determine the guilt or innocence of the accused as to any lesser offense which is necessarily included in the crime charged.

The crime of forcibly assaulting a Federal officer, with the use of a deadly or dangerous weapon, which is charged in the indictment in this case, necessarily includes the lesser offense of forcibly assaulting a Federal officer, without the use of a deadly or dangerous weapon.

(Emphasis added.)

the enforcement of a penal code against the imposition of a harsher punishment.

*Id.* This conclusion is supported by the reasons that underlie the rule that a defendant is entitled to a lesser-included offense instruction in a proper case. Such an instruction "ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard." *Beck v. Alabama,* 447 U.S. 625, 634, 100 S.Ct. 2382, 2388, 65 L.Ed.2d 392 (1980). As the Court said in *Keeble v. United States,* 412 U.S. 205, 212–13, 93 S.Ct. 1993, 1997–1998, 36 L.Ed.2d 844 (1973):

> True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction (emphasis in original).

The same risk is created by an instruction that the lesser offense cannot be considered unless the jury first agrees unanimously that the defendant is not guilty of the greater offense.

■ Although the evidence in this case is overwhelming that defendant violated 18 U.S.C. § 111, a rational jury could have concluded that defendant committed the lesser offense of assault without a dangerous weapon. The jury might have found a basis for reasonable doubt that defendant fired the gun in the testimony of a number of witnesses near the scene that they heard only one shot. The jury may have believed only Agent Bell fired his gun. If the jury accepted the testimony that defendant had admitted firing the gun, the jury might also have accepted his statement that he fired into the sky. Defendant's brother testified defendant's gun was not loaded, and that

defendant pointed the gun toward the sky and not toward the officers. The physical circumstances affecting defendant's ability to see the officers, the darkness of the night and the fact that a searchlight was shining in his face, lend support to counsel's argument that defendant did not threaten the officer with the weapon.

The instruction given by the court did not allow the jury to consider the lesser offense unless the jury first unanimously acquitted defendant of the greater offense. Under this instruction the jury could not consider the lesser offense at all if unable to agree on a verdict for the greater offense. Theoretically, the result would be a mistrial. Practically, however, in this case the risk was substantial that jurors harboring a doubt as to defendant's guilt of the greater offense but at the same time convinced that defendant had committed some offense might wrongly yield to the majority and vote to convict of the greater offense rather than not convict defendant of any offense at all. *See Tsanas,* 572 F.2d at 346. *See also Keeble v. United States,* 412 U.S. at 212, 93 S.Ct. at 1997. The instruction requested by defendant would have avoided this risk and thus should have been given.

REVERSED and REMANDED.