# STATE OF MONTANA,
## Plaintiff and Respondent,
### v.
# ROBERT ROBBINS,
## Defendant and Appellant.

No. 96-562.
Submitted on Briefs July 29, 1998.
Decided December 8, 1998.
1998 MT 297.
55 St.Rep. 1213.
292 Mont. 23.
971 P.2d 359.

For Appellant: **William F. Hooks**; Montana Appellate Defender Office, Helena.

For Respondent: **Hon. Joseph P. Mazurek**, Attorney General; **Pamela P. Collins**, Ass't Attorney General, Helena; **Brant Light**, Cascade County Attorney, Great Falls.

JUSTICE LEAPHART delivered the Opinion of the Court.

¶1 Appellant, Robert Robbins (Robbins), was convicted of deliberate homicide and robbery following a trial by jury in the Eighth Judicial District Court, Cascade County. Robbins appeals from the court's settlement of the jury instructions and from the court's order denying his motion to strike the jury as improperly summoned. We affirm.

### Issues Presented

¶2 There are two issues presented for appeal:

¶3 (1.) Did the District Court err by refusing Robbins' request to provide a corrective instruction that the jury may consider the lesser offense of negligent homicide if it is unable, after reasonable effort, to reach a unanimous verdict on the greater offense of deliberate homicide?

¶4 (2.) Did the District Court err in denying Robbins' motion to strike the venire?

## Factual and Procedural Background

¶5    On the evening of July 6, 1995, a man later identified as George Weaver (Weaver) was found dead in a stairwell in a parking garage in Great Falls. An autopsy indicated that Weaver had died of blunt force injuries to his head, neck, and torso. Since the numerous internal and external injuries sustained by Weaver were inconsistent with an accident, the state medical examiner determined that the cause of death was homicide.

¶6    A homeless man who had been sleeping in the stairwell at the parking garage, approached police at the scene of Weaver's death and told them that he had just encountered a person he knew as "Rob," later identified as Robbins, in an alley near the parking garage. In the alley, Robbins had stated that he was heading over to his girlfriend's house, and that he had just "rolled" somebody in the parking garage for about fifty dollars. This man later testified that he understood the term "rolled" to mean physically taking money from another person.

¶7    An acquaintance of Robbins recalled seeing him early in the afternoon of July 6, 1995, at which time Robbins had mentioned that he was "broke." Another acquaintance of Robbins testified that a group of friends, including Robbins and Weaver, had been drinking alcohol together on the afternoon of July 6, 1995, in Gibson Park. After spending most of the afternoon in the park, the group proceeded to leave. Shortly thereafter, Weaver left the group and Robbins followed him.

¶8    Based on the homeless man's statements at the crime scene, police went to the apartment of Robbins' girlfriend. Robbins answered the door and identified himself. His appearance matched the description given to the officers. The officers observed blood on Robbins' hands, socks, and pants. Robbins later explained that he had been locked out of the apartment, and had cut himself trying to break in. However, there was also blood on the soles of his shoes that appeared to match the pattern of bloody shoe prints that the officers had observed at the site of Weaver's death. Around 1:00 a.m. on the morning of July 7, 1995, the officers arrested Robbins for suspicion of homicide. They searched his body, finding $66 in cash. Although they could smell the odor of alcohol, the officers later testified that Robbins did not appear overly intoxicated; he seemed to understand their questions, could speak clearly, and was able to walk in a normal manner.

¶9    At the police station, Robbins was apprised of his rights and voluntarily consented to an interview. Robbins was interviewed by a detective, starting at approximately 1:55 a.m. During the course of this

first interview, Robbins did not appear to the detective to be intoxicated; his speech and mannerisms were coherent. In this interview, Robbins denied knowing Weaver and denied having been in the parking garage on the evening of July 6, 1995. The interview ended at approximately 2:30 a.m. with Robbins continuing to deny any involvement in Weaver's death.

¶10    However, Robbins informed the detective at about 3:25 a.m. that he wished to speak with him again. In this second interview, Robbins admitted that he and Weaver were together at Gibson Park on the afternoon of July 6, 1995, that they had left the park together, and that they had then gone to the parking garage where they got into a fight. The dispute apparently arose from Robbins' accusation that Weaver had not bought enough drinks for him that day. Robbins claimed that Weaver took a swing at him, whereupon Robbins ran into the stairwell of the parking garage. Weaver apparently followed after him. Robbins then swung and hit Weaver. Weaver fell down, and Robbins started kicking him while he was on the ground. Robbins recounted that Weaver's head hit the wall of the parking garage several times while he was kicking him.

¶11    In this second interview, when the detective queried whether Robbins really felt that Weaver had not been buying him enough drinks, Robbins responded:

No, I didn't. I just—I don't know what came over me, man. It just—I guess greed and lust got the better of me, you know. I just—I just went off, you know. I just—just went off on the guy when I shouldn't have because I guess I went a little too far .... [Weaver] started gurgling and some blood started coming in his mouth and that's when I got scared and ran.

¶12    Later in the same interview, when the detective asked Robbins what his intention was at the time the fight broke out, Robbins stated: "I honestly don't know. Like I said, I just lost it. ... I didn't really have any intentions. I mean, I didn't intend for the guy to just, you know, to die or anything like that. There was—I didn't expect that at all."

¶13    In an information filed on July 20, 1995, the State charged Robbins in Count I with the offense of deliberate homicide, a felony, and in Count II with the offense of robbery, also a felony. Robbins appeared with court-appointed counsel at his arraignment on August 1, 1995, and pleaded not guilty to the charges. Trial was set for March 25, 1996.

¶14  On the first day of trial, prior to *voir dire*, Robbins objected to the procedure utilized by the clerk of court to notify persons whose names had been randomly drawn for jury duty. The clerk testified that, beginning with the first name on the random list of 150 registered voters, she had proceeded to telephone each potential juror to inform that individual that he or she had been selected for jury duty. The clerk first attempted to call a prospective juror's business; if she was unable to either contact that individual at work or to leave a message at the individual's workplace, the clerk then attempted to call the prospective juror at his or her home phone number. When she was unable to either personally contact or leave a message for a prospective juror, the clerk moved on to the next name on the list. If the potential juror did not answer, did not have an answering machine, or did not return the clerk's telephone call, then that person was effectively removed from jury duty. As individuals were contacted, their names were added to the pool of potential jurors until the clerk had a satisfactory group of 84 persons.[1] From this pool, five jurors were dismissed by the court; however, the clerk did not have any record of the court's grounds for excusing those five jurors.

¶15  Robbins argued that the phone-dependent procedure employed by the clerk automatically excluded persons who could not afford a telephone or who did not otherwise have someone at home to answer the phone. Robbins further complained that the process apparently permitted the court to excuse potential jurors without noting the reason for excuse. The essence of Robbins' claim was that the statutory requirement of a summons to court ensures that each prospective juror will personally appear in court unless properly excused by the court prior to the first day of trial.

¶16  The court denied Robbins' motion to strike the jury panel as "untimely," finding that the objection was not raised at least five days prior to trial as procedurally required by statute. The court also "overruled [Robbins' objection] substantively" in concluding that the clerk was in "substantial compliance with the statutes." With respect to Robbins' objection to the lack of notation for the grounds of excusal, the court stated that "[t]his order constitutes verification ... that any

1. The District Court ordered the clerk to summon 75 individuals for potential jury service in Robbins' trial. The clerk testified that she contacted 84 prospective jurors in anticipation that a few individuals would be excused from jury service by the court prior to the first day of trial.

juror who was excused prior to the first day of trial was excused for a reason determined by the Court to have constituted undue hardship for the person or the public served by the person. Section 3-15-313, M.C.A." In sum, the District Court concluded that Robbins received a fair and impartial jury in compliance with the relevant statutory and constitutional requirements. Trial thus proceeded to commence with the jury that had been selected.

¶17   At trial, the State contended that Robbins purposely and knowingly robbed and killed Weaver. While Robbins did not deny that the robbery and resulting death of Weaver occurred as a result of his actions, he argued that he could only be convicted of negligent homicide based on the facts. In particular, he asserted that his statements in the second post-arrest interview—that he "didn't really have any intentions" to cause Weaver's death—demonstrated that he did not deliberately kill Weaver.

¶18   Since Robbins' mental state at the time of Weaver's death was at issue, Robbins requested a jury instruction that specified negligent homicide as a lesser included offense of deliberate homicide. During formal settlement of the jury instructions, the District Court produced a lesser included offense instruction drafted by the court (Instruction No. 18), which stated:

> In your deliberations you should consider the charge of deliberate homicide first, and ... all twelve of you [must] find the defendant either guilty or not guilty of that charge.
>
> ....
>
> In the event that you find the defendant not guilty of deliberate homicide, you must then consider the lesser included offense of negligent homicide. You must then find the defendant guilty or not guilty of this charge.

At that time, counsel for Robbins did not object to Instruction No. 18.

¶19   When the court later began to instruct the jury, Robbins raised an objection to Instruction No. 18 just prior to it being read to the jury. He claimed that it contained a "misstatement of the law" to the extent that "it implie[d] that the jury w[ould] have to unanimously find the defendant not guilty of deliberate homicide before they c[ould] consider the lesser included offense." Defense counsel suggested, instead, "that a proper statement of the law would indicate that, ... if [the jury has] the inability to find the defendant guilty [or not guilty] of deliberate homicide, they then may consider the lesser included offense of negligent homicide."

¶20    Robbins thus asked the court to amend the instruction. In response, the prosecutor contended that Instruction No. 18 complied with the pattern jury instruction upon which it was based. The court agreed and clarified the prosecution's point by reading aloud from an unidentified source: "When a lesser included offense instruction is given, the Court shall instruct the jury that it must reach a verdict on the crime charged before it may proceed to [the] lesser included offense." On the basis of these representations by the prosecutor and the court, defense counsel acquiesced to Instruction No. 18 as written. Accordingly, the District Court instructed the jury that all twelve jurors had to find Robbins either guilty or not guilty of deliberate homicide before they could consider the lesser offense of negligent homicide.

¶21    Following closing arguments, the court proposed to give a corrective jury instruction regarding *deliberate homicide* to clear up potential jury misunderstandings that it felt might have arisen during the arguments at trial. It overruled objections by the prosecution that this was improper, stating that "the statute regarding the order of trial clearly recognizes ... that for good cause shown and in the discretion of the Court, the order prescribed may be departed from." The court thus amended the deliberate homicide instruction.

¶22    After several hours of deliberation, the jury submitted a written question to the court:

We need clarification on point #18. Do all of us have to agree on guilty or not guilty to move on to negligent homicide? For example: If 6 people say guilty of deliberate and 4 say not guilty of deliberate, can we move on to the negligent charge or are we a hung jury?

The prosecutor responded that the question could be adequately answered by simply referring the jury back to Instruction No. 18. Defense counsel then requested from the court the citation of the statute contained in the pattern jury instruction upon which Instruction No. 18 was based. The court referred Robbins' counsel to § 46-16-607(3), MCA, which states in relevant part: "Upon request of the defendant at the settling of instructions, the Court shall instruct the jury that it may consider the lesser included offense if it is unable after reasonable effort to reach a verdict on the greater offense."

¶23    Given this disjunction between Instruction No. 18 and the statute upon which it was supposedly based, defense counsel asked the court to again find good cause to depart from the order of trial regarding jury instructions, and to reinstruct the jury accordingly. The Dis-

trict Court declined to find good cause. In particular, the court noted that Robbins' objection to Instruction No. 18 had been previously withdrawn at the settlement conference, and that it was now "too late" to raise an objection to the jury instructions. Thus, the court referred the jury back to Instruction No. 18.

¶24 Jury deliberations continued and the jury returned a verdict of guilty to the charge of deliberate homicide. In announcing its verdict, the jury stated in a written note to the court: "We have reached a decision based on the laws given us. But we are uncomfortable with having to follow them." During sentencing, one of the jurors also testified that it had been difficult to convict Robbins of deliberate homicide because, given the evidence, some of the jurors had harbored doubts as to whether Robbins had killed Weaver with the requisite intent. Robbins appeals his conviction.

## Discussion

¶25 (1.) Did the District Court err by refusing Robbins' request to provide a corrective instruction that the jury may consider the lesser offense of negligent homicide if it is unable, after reasonable effort, to reach a unanimous verdict on the greater offense of deliberate homicide?

¶26 Robbins argues that the District Court was under an affirmative duty to correct the mistaken information in Instruction No. 18 by providing an additional, corrective instruction to the jury. The State responds that a trial court is under no duty, in the absence of a timely request by the defendant, to instruct the jury that it may consider the lesser offense if it is unable, after a reasonable effort, to reach a unanimous verdict on the greater offense.

¶27 ■ Trial courts are vested with broad discretion to formulate appropriate jury instructions. *State v. Ross* (1995), 269 Mont. 347, 358, 889 P.2d 161, 167. We review jury instructions in a criminal case to determine if the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *State v. Gonzales* (1996), 278 Mont. 525, 531, 926 P.2d 705, 709.

¶28 ■ As a basic rule, trial courts are required to instruct a jury on every issue or theory that is supported by the evidence. *State v. Thornton* (1985), 218 Mont. 317, 320, 708 P.2d 273, 276. It is well settled that, upon request, a criminal defendant is entitled to a lesser included offense instruction if any evidence exists in the record that would allow the jury to rationally find the defendant guilty of the lesser offense and to acquit the defendant of the greater offense. *State*

*v. Hamilton* (1980), 185 Mont. 522, 535, 605 P.2d 1121, 1129; *State v. Fisch* (1994), 266 Mont. 520, 522, 881 P.2d 626, 628 (citing § 46-16-607(2), MCA; *State v. Sheppard* (1992), 253 Mont. 118, 123, 832 P.2d 370, 373). A criminal "defendant may be convicted only of the 'greatest included offense about which there is no reasonable doubt.'" *State v. Castle* (1997), 285 Mont. 363, 367, 948 P.2d 688, 690, *quoting* § 46-16-606, MCA; *see also State v. Peterson* (1987), 227 Mont. 503, 508, 741 P.2d 392, 395.

¶29  The essential difference between the offense of deliberate homicide and the offense of negligent homicide is the mental state necessary to convict a defendant of the respective crimes. *See Hamilton*, 185 Mont. at 534-35, 605 P.2d at 1128. Based on Robbins' contention that he lacked the requisite intention to deliberately kill Weaver, the District Court gave an instruction on negligent homicide as a lesser included offense of deliberate homicide. *See State v. Sotelo* (1984), 209 Mont. 86, 89, 679 P.2d 779, 781.

¶30  The State contends, however, that negligent homicide has not been construed as a lesser included offense of deliberate homicide under relevant case law. We note that, where a criminal defendant is entitled to a lesser included offense instruction, that entitlement is premised upon the offense actually comprising a lesser included offense of the greater offense. *See Fisch*, 266 Mont. at 522, 881 P.2d at 628. While we reach no conclusion as to whether negligent homicide is in fact a lesser included offense of deliberate homicide, we agree with Robbins that the State's failure to object that negligent homicide is not a lesser included offense of deliberate homicide at the settling of jury instructions renders this instruction the law of the case. In the civil context, "[w]e have 'long adhered to the rule that an instruction given without an objection becomes the law of the case.'" *DeBruycker v. Guaranty Nat. Ins. Co.* (1994), 266 Mont. 294, 301, 880 P.2d 819, 823, *quoting Nicholson v. United Pacific Ins. Co.* (1985), 219 Mont. 32, 38, 710 P.2d 1342, 1346 (overruled on other grounds). There is no good reason why this same rule should not apply in the criminal context under the circumstances of this case—that is, where the State had ample opportunity to object to a proposed jury instruction before it was given to the jury, but failed to do so. Thus, we decline to entertain the State's suggestion that "Robbins was not entitled to an instruction on negligent homicide in the first instance."

¶31  The State further contends that the District Court's refusal to give a corrective instruction was not error because Robbins' objection

was untimely. The State is correct in asserting that § 46-16-410(3), MCA, prevents a party from assigning "as error any portion of the instructions or omission from the instructions unless an objection was made specifically stating the matter objected to, and the grounds for the objection, *at the settlement of instructions.*" Section 46-16-410(3), MCA (emphasis added). Generally, when a claimed error concerns jury instructions that were not objected to at the time the instructions were settled, the alleged error may not be raised for the first time on appeal. *State v. Smith* (1986), 220 Mont. 364, 381-82, 715 P.2d 1301, 1311.

¶32 Despite this general rule, this Court will review jury instructions in certain circumstances, even in the absence of an objection, to determine "whether or not the jury was properly instructed." *State v. Watson* (1965), 144 Mont. 576, 582, 398 P.2d 949, 952. It is evident from the record that there was significant confusion among the court, the prosecutor, and Robbins' counsel concerning the correct procedural sequence, given a timely request by a defendant, for the jury to consider the greater and lesser offenses during its deliberations. As previously noted, a district court must fully and fairly instruct the jury on the applicable law. *See Gonzales,* 278 Mont. at 531, 926 P.2d at 709. The withdrawal of Robbins' timely request for an instruction at settlement—that the jury may consider the lesser offense if it fails to agree on a verdict for the greater offense—was due to the mistaken representations of the court and the prosecutor that the law did not permit such an instruction. Later, when the jury indicated its confusion concerning Instruction No. 18 to the court, the legal error in that instruction became apparent. Because Robbins' counsel withdrew his initial, timely request for such an instruction based on the misleading representations of the court and prosecutor, we choose to take cognizance of Robbins' claimed error in Instruction No. 18.

¶33 Contrary to Robbins' position that the District Court had an affirmative duty to amend Instruction No. 18, in *State v. Van Dyken* (1990), 242 Mont. 415, 433, 791 P.2d 1350, 1361, we held that "giving the acquittal first instruction even in the face of defendant's request for the failure to agree instruction was not error." However, the *Van Dyken* decision was issued prior to the revision of Montana's criminal code in 1991. As Robbins makes evident, the District Court's Instruction No. 18 was adopted from pattern jury instruction No. 1-011 contained in the 1990 edition of Montana Criminal Jury Instructions. The statutory basis for this pattern jury instruction was § 46-16-602,

MCA (1989). In 1991, however, § 46-16-602, MCA (1989), was renumbered as § 46-16-606, MCA. More importantly, a new statute, § 46-16-607, MCA, was enacted that qualified the unanimity requirement of the predecessor statute, § 46-16-602, MCA (1989).

¶34    Section 46-16-607(3), MCA, provides that, "[u]pon request of the defendant at the settling of instructions, the court shall instruct the jury that it may consider the lesser included offense if it is unable after reasonable effort to reach a verdict on the greater offense." Section 46-16-607(3), MCA. Thus, under this new standard, as long as a criminal defendant *requests* a "failure to agree" instruction at the settling of jury instructions, a district court *must* instruct the jury that it may consider the lesser offense without first reaching a unanimous verdict on the greater offense. Commission comments indicate that § 46-16-607(3), MCA, was drafted to comport with *United States v. Jackson* (9th Cir. 1984), 726 F.2d 1466, 1469, which held that when a defendant makes a timely request for an instruction that the jury may consider the lesser offense if unable after reasonable effort to agree on a verdict for the greater offense, "it is error to reject the form timely requested by defendant."

¶35    In *Jackson*, the Ninth Circuit Court of Appeals reasoned that the failure to give such an instruction creates a "risk ... that jurors harboring a doubt as to defendant's guilt of the greater offense but at the same time convinced that defendant had committed some offense might wrongly yield to the majority and vote to convict of the greater offense rather than not convict defendant of any offense at all." *Jackson*, 726 F.2d at 1470.[2] Robbins contends that the jury's note to the court indicating that it was "uncomfortable" with having to apply the "laws given to us," as well as the testimony of the one juror at sentencing that a number of jurors harbored doubt as to Robbins' guilt on the greater offense of deliberate homicide, raises the specter of "risk" alluded to in *Jackson*. Thus, given the District Court's "either-or" instruction regarding the jury's consideration of the greater and lesser

2. This Court has noted that the liberal policy in Montana of allowing jury instructions on lesser offenses whenever there is *any* evidence in the record to support such an instruction is designed to protect against a similar risk. In such a situation, there is the danger that the jury, convinced that the defendant committed some offense but unsure of whether the defendant committed the charged offense, may convict rather than let the defendant's actions go unpunished simply because acquittal is the only alternative to conviction provided for in the instructions. *See State v. Gopher* (1981), 194 Mont. 227, 231, 633 P.2d 1195, 1197-98.

offenses, he argues that some of the more reluctant jurors may have "wrongly yielded" to those jurors convinced that Robbins was guilty of deliberate homicide, rather than not convict Robbins of any offense at all.

¶36 ■ We agree with Robbins that the District Court should have provided a corrective instruction to the jury. The trial judge is under a "duty to instruct" the jury on every issue or theory finding support in the evidence, and this duty is discharged by giving instructions which accurately and correctly state the law applicable in a case. *State v. Meidinger* (1972), 160 Mont. 310, 322, 502 P.2d 58, 65; *State v. DeMers* (1988), 234 Mont. 273, 280, 762 P.2d 860, 864. Hence, a trial judge may properly refuse a proffered jury instruction on the ground that it contains a misstatement of the law. *See State v. Crazy Boy* (1988), 232 Mont. 398, 403, 757 P.2d 341, 344; *State v. McKenzie* (1980), 186 Mont. 481, 510, 608 P.2d 428, 446. Likewise, a failure to instruct the jury on essential questions of law can constitute reversible error. *See State v. Sheppard* (1992), 253 Mont. 118, 122, 832 P.2d 370, 372.

¶37 ■ When the jury indicated to the court its confusion concerning Instruction No. 18, Robbins' counsel made it clear that § 46-16-607(3), MCA, permits a "failure to agree" instruction—as Robbins' counsel had initially suggested at settlement. Thus, the court was under a duty to correct the erroneous instruction. " '[I]f ... the jury is later given additional instructions or the instructions are reread to the jury and it appears that the instructions then given or repeated are erroneous, *objection may be made at that time and it is the court's duty to correct the error.*' " *Fan Fare, Inc. v. Fourdel Indus., Ltd.* (M.D. Ala. 1983), 563 F. Supp. 754, 759, *quoting* 9 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 2553, at 642 (1971) (emphasis added).

¶38 ■ Moreover, "[i]f the judge is of the opinion the instructions already given ... fully advise the jury on the procedures it is to follow in its deliberation, his [or her] refusal to answer a question already answered in the instruction is not error." *State v. Hawkins* (1974), 165 Mont. 456, 460, 529 P.2d 1377, 1379. Here, however, Instruction No. 18 failed to "fully advise the jury" on the correct procedural sequence for considering the greater and lesser offenses. Although it is unclear from the record, the court at settlement either read aloud a pattern jury instruction based upon an outdated Montana statute or read only the beginning sentence of § 46-16-607(3), MCA, but failed to read the second sentence, which permits a "failure to agree" instruction if

requested by a defendant at the settling of instructions. *See* § 46-16-607(3), MCA.

¶39    As Robbins correctly indicates, this second sentence of § 46-16-607(3), MCA, codifies the rule announced in *Jackson*. Thus, Robbins' counsel had properly raised an objection to Instruction No. 18 at settlement, and it was only because of the mistaken representations by the court and prosecutor that the objection was later withdrawn. When this earlier error by the court became apparent, the court should have exercised its statutory authority to find "good cause" to depart from the order of trial in order to provide the jury with a corrective instruction. Section 46-16-402, MCA. Indeed, the District Court had already, upon its own initiative, exercised this authority to depart from the order of trial specified in § 46-16-401, MCA, so as to provide a corrective instruction on deliberate homicide.

¶40    ▮ We hold that the District Court erred in referring the jury back to Instruction No. 18 without correcting the erroneous statement of law contained therein. We stress, however, that this case is unusual. Robbins' withdrawal of his initial request for a "failure to agree" instruction was excusable because of a mistaken understanding of the law inadvertently perpetuated by the court and prosecutor. The jury, during its deliberations, then indicated to the court its confusion on this very same point—whether it could consider the negligent homicide charge without first reaching a unanimous verdict on the deliberate homicide charge. However, the court refused to correct the error when it became evident, despite its statutory authority to do so. Again, we emphasize that a party must ordinarily object to jury instructions before they are submitted to the jury. *See* § 46-16-401(4), MCA. A failure to object or the withdrawal of an objection at the settling of instructions, will normally render the claimed error in the jury instructions nonappealable. *Smith*, 220 Mont. at 381-82, 715 P.2d at 1311; *Meidinger*, 160 Mont. at 322, 502 P.2d at 65.

¶41    Furthermore, the fact that we have chosen to address Robbins' appeal regarding Instruction No. 18 in this unusual case, does not imply that he will ultimately prevail. To comprise reversible error, the actions of the district court must affect Robbins' substantial rights. *State v. Long* (1995), 274 Mont. 228, 234, 907 P.2d 945, 948; §§ 46-20-104(2) and 46-20-701(2), MCA. While we recognize the importance of the risk identified in *Jackson* and embodied in § 46-16-607(3), MCA, we agree with the State that there is insufficient evidence in the record to support a conviction for the lesser offense of negligent homicide.

¶42    Robbins' own statements in the post-arrest interview indicate that he knocked Weaver to the ground in the parking garage stairwell, and then repeatedly kicked Weaver's head without apparent provocation. Robbins further stated that he saw Weaver's head strike the wall several times while he was kicking him. As a result, Weaver sustained massive external and internal injuries, including: numerous bruises, abrasions, and lacerations to the head and torso; a fracture of the bone underneath the bridge of the nose; a fractured hyoid bone; the fracture and separation of the upper jaw from the rest of the skull; twenty-three fractured ribs; a shallow tear in one of the pumping chambers of the heart; a severe tear in the left lobe of the liver; and internal bleeding in the chest and abdominal cavities. The state medical examiner also discovered numerous bruises and abrasions on the back side of Weaver's hands and wrists, which were determined to be consistent with "defensive injuries."

¶43    The severity of Weaver's injuries belie any finding of negligent homicide. We agree with the District Court's comment at sentencing that the evidence in this case clearly supported the deliberate homicide conviction. While the District Court should have issued a corrective, "failure to agree" jury instruction in this case, we conclude that its failure to do so was harmless beyond a reasonable doubt and did not impermissibly taint the jury's verdict. *State v. Wereman* (1995), 273 Mont. 245, 251-52, 902 P.2d 1009, 1013; *see also State v. Rothacher* (1995), 272 Mont. 303, 310-12, 901 P.2d 82, 87-88.

¶44    In the alternative, Robbins argues that he was denied effective assistance of counsel in violation of his constitutional rights. Since we have already determined that, based upon the evidence, the District Court's refusal to issue a corrective, "failure to agree" instruction was harmless error, we need not address whether Robbins' counsel was ineffective in failing to make a timely request for such an instruction at the settling of jury instructions.

¶45    (2.) Did the District Court err in denying Robbins' motion to strike the venire?

¶46    Robbins asserts that the court erred in denying his motion to strike the jury panel, and that this error infringed upon his statutory and constitutional rights to a fair trial. The State responds that the motion was properly denied because Robbins' challenge to the statutory selection procedure was untimely, and because Robbins has failed to otherwise make the necessary showing of prejudice to sustain his contention that he was constitutionally denied his right to an impartial jury.

¶47 The District Court denied Robbins' motion as untimely pursuant to § 46-16-112, MCA. Because this ruling involves a legal conclusion, we review the District Court's conclusion to determine whether it is correct. *State v. Anderson* (1997), 282 Mont. 41, 43, 934 P.2d 1037, 1038. In the absence of "good cause shown," a motion to discharge a jury panel "must be made at least 5 days prior to the term for which the jury is drawn." Section 46-16-112(1), MCA. Robbins counters that he was not objecting to the manner in which the names of jurors were initially selected or drawn, but rather, to the procedure by which the clerk of court notified or summoned those persons whose names had been randomly drawn. Robbins thus asserts that the five-day mandate of § 46-16-112, MCA, was inapplicable to his motion to strike the venire, and accordingly, the District Court erred by concluding that his challenge to the summoning procedure was untimely.

¶48 Although Robbins claims that he is not objecting to the drawing process on appeal, in his brief to this Court he raises a challenge to the drawing process under § 3-15-503, MCA, arguing that the clerk's procedure was improper because not carried out pursuant to court order. We conclude that Robbins has waived this additional claim. In his written motion to the District Court, Robbins stated that he did "not object to the manner of selection, nor to the manner of drawing jurors for court." Instead, he claimed to be objecting "to the manner in which the jury panel ha[d] been *summoned* into court," or put another way, "to the manner in which the jurors [had been] notified to appear."

¶49 Robbins may neither allege an error for the first time on appeal, nor may he change his theory on appeal from that advanced at trial. *State v. Woods* (1997), 283 Mont. 359, 372, 942 P.2d 88, 96 (citing §§ 46-20-104(2) and 46-20-701(2), MCA; *State v. Greywater* (1997), 282 Mont. 28, 35, 939 P.2d 975, 979). Because any challenge to the clerk's methods of selection or drawing was not preserved for appeal, we will not address whether the clerk of court properly complied with the statutory selection and drawing procedures. This does not imply that we necessarily condone the clerk's techniques in this case. We would urge that the clerk's office carefully review its methods for the selection and drawing of jurors to ensure that they do in fact comply with the relevant Montana statutes.

¶50 Robbins points out that, after jurors are selected and drawn, the clerk is then required to "serve notice by mail on the persons drawn as jurors and require response thereto by mail as to their qualifications to serve as trial jurors." Section 3-15-505, MCA. If no response is obtained

by this form of summoning, the clerk is required to have the sheriff "serve notice personally on such person and require a response to the notice." Section 3-15-505, MCA. The State concedes that if any statutory violation occurred in this case, it was that prospective jurors were not served notice personally by the sheriff as required by § 3-15-505, MCA.

¶51 ▮ The District Court, in its order, found that the clerk of court had "substantially complied" with the relevant statutes. We disagree. The clerk, in relying solely upon the telephone to summon jurors, failed to either serve by mail or to serve personally those jurors whose names had been drawn for Robbins' trial, in violation of § 3-15-505, MCA. We hold that the District Court erred in impliedly finding substantial compliance with the statutory procedure for summoning jurors.

¶52 Nevertheless, the State correctly asserts that this Court may not reverse the District Court's order denying Robbins' motion to discharge the venire "unless the record shows that the error was prejudicial." Section 46-20-701(1), MCA. In response, Robbins argues that the failure to personally serve and require a response from those jurors whose names had been drawn for jury duty resulted in "the exclusion from the venire of those persons who could not afford a telephone."

¶53 ▮ Robbins provides this Court with no actual evidence that people of "low economic and social status" were necessarily excluded from the venire, resulting in a jury lacking in impartiality in this case.[3] Robbins' argument is premised upon an assumption that those persons whom the clerk was unable to contact by telephone were too poor to afford a telephone. However, in the absence of any evidence to support this assumption, one can just as easily assume that these individuals possessed telephones but were not at home when the clerk

3. Nor is this a case where proof of such prejudicial effect is clearly beyond the means of the defendant. The record indicates that the clerk kept notes as to which persons on the list had been successfully contacted by telephone or for whom a message had been left. Robbins most likely could have obtained the clerk's notes and the list of 150 registered voters drawn for jury duty in his trial, and then by using the telephone book, determined how many of the prospective jurors that the clerk was unable to contact either had no telephone or had an unlisted number. While the results of such a simple poll would not be infallible, they would be helpful in proving prejudicial effect (or lack thereof). These numbers could have then been compared with the 84 persons telephonically notified by the clerk of court to determine if this phone-dependent process did in fact produce a discriminatory pattern or outcome by excluding many individuals without telephones from potential jury duty in Robbins' trial.

called; or that they had answering machines but did not return the clerk's call; or that they possessed a telephone but had an unlisted phone number. An error by a trial court that "does not affect substantial rights must be disregarded." Section 46-20-701(2), MCA. We hold that Robbins has failed to demonstrate that the District Court order denying his motion to strike the jury panel resulted in actual prejudice affecting his substantial rights.

¶54    Robbins further contests the method by which jurors were excused in this case. He argues that the clerk's failure to record the court's grounds for excuse evidences a statutory violation. We disagree. "The court or jury commissioner [i.e., the clerk of court] with the approval of the court shall excuse a person from jury service upon finding that jury service would entail undue hardship for the person or the public served by the person." Section 3-15-313(1), MCA. In essence, Robbins is arguing that the telephone method employed by the clerk resulted in the clerk herself excusing jurors without the "approval of the court." It is impermissible, pursuant to § 3-15-313, MCA, for a clerk to excuse jurors without court approval. *See Tribby v. Northwestern Bank of Great Falls* (1985), 217 Mont. 196, 205, 704 P.2d 409, 415.

¶55    Although the clerk did not have a record in this case of the court's reasons for excusing particular jurors, she testified that the "Judge's office excused" the jurors because the clerk's office "do[es] not have the authority to excuse them." Nor does the record otherwise indicate that the clerk personally excused jurors in this case. In its order, the District Court stated that "[t]his order constitutes verification ... that any juror who was excused prior to the first day of trial was excused for a reason determined by the Court to have constituted undue hardship for the person or the public served by that person. Section 3-15-313, MCA." Thus, we determine that the clerk did not excuse jurors without court approval. However, for future reference, we admonish the clerk's office not to use the telephone to summon potential jurors. Under different circumstances, the clerk's inability to contact a particular juror by telephone, resulting in that juror being excused from jury duty, could be construed as the clerk personally excusing a juror in violation of § 3-15-313, MCA.

¶56    Robbins also asserts that his constitutional right to trial by an impartial jury drawn from a representative cross-section of the community, as guaranteed by the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution,

is necessarily implicated. However, we will not entertain Robbins' constitutional argument. Claims that constitutional rights have been violated cannot, in the absence of plain error, be raised for the first time on appeal. *State v. Huerta* (1997), 285 Mont. 245, 260, 947 P.2d 483, 492 (citing § 46-20-701(2), MCA). By failing to raise below the argument that his constitutional right to a fair and impartial jury was compromised, Robbins failed to preserve this issue for appeal.

¶57     Even were we to entertain this claim, it is apparent that it would falter for the same reason that Robbins' statutory claim of prejudice was unsuccessful. Robbins has simply failed to adduce any actual proof of prejudice due to the clerk's method of summoning jurors. As a result, we can discern no plain error affecting Robbins' substantial rights that would allow this Court to entertain his constitutional claim. We hold that Robbins has failed to preserve his constitutional challenge to the summoning process.

¶58     In conclusion, we hold that the District Court erred in failing to provide a corrective instruction to the jury, but we conclude that the error was harmless as there was insufficient evidence in the record to support a conviction for negligent homicide. Further, we hold that the District Court erred in finding that the clerk of court was in substantial compliance with the statutory procedure for summoning jurors, but we conclude that this error was also harmless as Robbins failed to adduce any proof of actual prejudice. Lastly, we hold that Robbins failed to preserve for appeal his constitutional challenge to the summoning procedure.

¶59     Affirmed.

JUSTICES GRAY, NELSON, HUNT and TRIEWEILER concur.