No. 99-183

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 31

STATE OF MONTANA,

Plaintiff and Respondent,

v.

WESLEY C. HUBBEL,

Defendant and Appellant.

APPEAL FROM: District Court of the Twenty-First Judicial District,

In and for the County of Ravalli,

The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Assistant Appellate Defender, Appellate Defender Office, Helena, Montana

For Respondent:

Joseph P. Mazurek, Montana Attorney General, Pamela P. Collins, Assistant Montana
Attorney General, Helena, Montana; George H. Corn, Ravalli County Attorney, James N.
Mickelson, Special Deputy Ravalli County Attorney, Hamilton, Montana

Submitted on Briefs: February 17, 2000

Decided: February 22, 2001

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Wesley Hubbel was convicted in the Twenty-First Judicial District Court, Ravalli County, by a jury of aggravated assault for shooting his wife. He was sentenced to 20 years in Montana State Prison with an additional 2 years for the use of a weapon, with 10 years suspended. Hubbel appeals from this conviction and sentence. We affirm in part and remand for further proceedings.

¶2 The following issues were presented on appeal:

¶3 1. Whether the appellant sustained his burden of demonstrating that his trial counsel was constitutionally ineffective for failing to request a "failure to agree" instruction as allowed by § 46-16-607(3), MCA.

¶4 2. Whether the District Court abused its discretion when it sentenced the appellant after retrial, suspending less time than after the first trial.

¶5 3. Whether the District Court abused its discretion when it ordered Hubbel to reimburse the costs of his court appointed counsel from his first trial.

¶6 4. Whether the District Court erred in failing to inquire into Hubbel's ability to pay the costs of his court appointed counsel.

Factual and Procedural History

¶7 Following an evening of dining, dancing and drinking, Wesley Hubbel (Hubbel) and his wife, Carol Dutton Hubbel (Dutton) returned to their home, south of Darby, Montana. Hubbel had been drinking heavily and the two had an argument. Dutton went out to the front porch to call her dog and Hubbel went into a spare bedroom. While searching for

money, he found a gun in a closet. He fired the .357 Magnum into the ceiling and then through the front door of the home, striking his wife twice, once in the neck and once in the leg. Hubbel claimed that he did not know that Dutton was on the other side of the door and that the injury was an accident.

¶8 After calling 9-1-1, Hubbel drove Dutton to a convenience store in Darby to meet an ambulance. Upon reaching the convenience store, Hubbel got out of the car, walked up to the police officer and said, "arrest me, I just shot my wife." Hubbel was arrested, and Dutton was put into the ambulance and received medical attention.

¶9 In an Information filed on December 11, 1995, Hubbel was charged with aggravated assault. Hubbel was arraigned and pleaded not guilty. A jury trial was held and Hubbel was found guilty of aggravated assault. The court sentenced him to 20 years in the Montana State Prison for the crime of aggravated assault, with an additional 2 years for the use of a weapon for a total of 22 years in the Montana State Prison. Of that sentence, 16 years were to be suspended under certain conditions. Those conditions included that Hubbel not be considered for parole or early release until he had successfully completed several of the prison's programs, including the Chemical Dependency Program, Anger Management Program, Moral Resonation Program, and the Criminal Thinking Errors Program.

¶10 Hubbel brought an appeal to this Court and his initial conviction was reversed. *See State v. Hubbel* (1997), 286 Mont. 200, 951 P.2d 971. The case was retried in September of 1998, and Hubbel was again convicted of aggravated assault by a jury. Following his second trial, Hubbel's probation and parole officer prepared an updated pre-sentence investigation report (PSI). This report noted that Hubbel was unable to complete any of the previously ordered programs and recommended that only 10 years of the 22 year sentence be suspended, rather than 16, as was ordered following the first trail. The prosecutor agreed with this recommendation, arguing that increased prison time was necessary for his rehabilitation. Hubbel's counsel recommended that the court impose the same sentence it had imposed after the first trial. At the sentencing hearing, Hubbel was again sentenced to 20 years for aggravated assault, with an additional 2 years for the use of a weapon. This time, however, only 10 years was to be suspended under certain conditions.

## Discussion

**¶11 Issue 1. Whether Hubbel sustained his burden of demonstrating that his trial counsel was constitutionally ineffective for failing to request a "failure to agree" instruction as allowed by § 46-16-607(3), MCA.**

¶12 Hubbel argues that his counsel was ineffective for failing to request a "failure to agree instruction." Not giving this instruction, he argues, limited the jury's consideration of the lesser included offenses. The instruction at issue, an "acquittal first" instruction, was proposed by the defendant and given by the court. The instruction provided in part:

> In your deliberations you should consider the charge of aggravated assault first, and that all twelve of you find the defendant either guilty or not guilty of that charge.
>
> In the event you find the defendant guilty of aggravated assault, you need go no further as you will have reached a verdict in this case . . .

¶13 Hubbel argues that this jury instruction contained a misstatement of the law. He argues that § 46-16-607(3), MCA, and this Court's decision in *State v. Robbins*, 1998 MT 297, 292 Mont. 23, 971 P.2d 359 (overruled in part on other grounds by *State v. LaMere*, 2000 MT 45, 298 Mont. 358, 2 P.3d 204), made a change in the law to require the use of a failure to agree instruction, making the instruction offered by defense counsel an incorrect and misleading statement of the law. He argues that this mistake made his counsel constitutionally ineffective.

¶14 A criminal defendant is denied effective assistance of counsel if: (1) his counsel's conduct falls short of the range reasonably demanded in light of the Sixth Amendment to the United States Constitution; and (2) counsel's failure is prejudicial. *State v. Chastain* (1997), 285 Mont. 61, 63, 947 P.2d 57, 58.

¶15 There is, however, a strong presumption of effectiveness:

> Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Strickland v. Washington* (1984), 466 U.S. 668, 689.
>
> We recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment. *Strickland*, 466 U.S. at 690.

¶16 Hubbel relies on this Court's decision in *State v. Robbins,* 1998 MT 297, 292 Mont. 23, 971 P.2d 359. In *Robbins*, we held that the district court erred in denying the defendant's request to give a corrective instruction that a jury may consider a lesser offense of negligent homicide if it is unable, after reasonable effort, to reach a unanimous verdict on the greater offense. *Robbins*, ¶ 40

¶17 Robbins, however, was an unusual case. The defense counsel had initially requested this "failure to agree" instruction, but was misled by the court and counsel for the prosecution. *Robbins*, ¶¶ 19-23.

¶18 Section 46-16-607(3), MCA provides:

> When a lesser included offense instruction is given, the court shall instruct the jury that it must reach a verdict on the crime charged before it may proceed to a lesser included offense. Upon request of the defendant at the settling of instructions, the court shall instruct the jury that it may consider the lesser included offense if it is unable after reasonable effort to reach a verdict on the greater offense.

¶19 The second sentence allows for what is known as a "failure to agree" instruction. In *Robbins*, we noted the new standard was limited to a request from the defendant:

> Thus, under this new standard, as long as a criminal defendant *requests* a "failure to agree" instruction at the settling of jury instructions, a district court *must* instruct the jury that it may consider the lesser offense without reaching a unanimous verdict on the greater offense. *Robbins,* ¶ 34.

This statute was drafted in order to comport with *United States v. Jackson* (9th Cir.1984), 726 F.2d 1466, 1469. *Jackson* held that when a defendant requests an instruction that the jury may consider the lesser included offense if unable, after reasonable effort, to agree on a verdict for the greater offense, "it is error to reject the form timely requested by defendant." However, contrary to Hubbel's argument, neither *Jackson* nor *Robbins* served to make use of the failure to agree instruction mandatory. While the use of the "failure to agree" instruction may be beneficial to the defendant, the language of § 46-16-607(3), MCA, clearly states that this instruction should be given "upon request of the defendant." *Jackson,* too, makes this form of jury instruction optional. The decision of whether or not

to give this instruction is left to the discretion of the defense.

¶20 In order to meet his burden, Hubbel is required to support his contentions that his counsel erred in not requesting the instruction. There is a strong presumption that defense counsel rendered adequate assistance and made all decisions in the exercise of reasonable professional judgment. The record on appeal is silent regarding why Hubbel's counsel acted or failed to act in the manner challenged. Defense counsel was never asked to provide an explanation and we must presume that he made his decision exercising reasonable professional judgment.

¶21 In the face of the strong presumption that counsel acted reasonably, and with no evidence to the contrary, we cannot agree with Hubbel that his counsel was ineffective. It is clear that the jury instructions offered by the defense were adequate. Nothing in the record indicates why, exactly, Hubbel's counsel did not give the failure to agree instruction. The record is silent on this issue. Hubbel has failed to meet his burden of demonstrating that counsel was ineffective without offering any explanation as to why, whether for tactical reasons or not, defense counsel failed to offer the failure to agree instruction but, instead, offered an "acquittal test" instruction.

¶22 Because we have determined that Hubbel has not sustained his burden of demonstrating that his trial counsel was in error in its offered jury instructions, we need not reach the second prong of the *Strickland* test. *Strickland,* 466 U.S. at 697. We hold that Hubbel has not sustained his burden of demonstrating that his defense counsel was constitutionally ineffective.

¶23 We note that the State makes the argument that criminal endangerment and negligent endangerment are not in fact lesser included offenses of aggravated assault. This issue, however, is one that should properly have been brought on cross appeal. The issue of whether these two offenses are lesser included offenses or not, has been waived by the State by failing to cross-appeal and we decline to reach this argument.

¶24 **Issue 2. Whether the District Court abused its discretion when it sentenced Hubbel after retrial, suspending less time than it did after his first trial.**

¶25 Hubbel argues that the District Court "punished" him for his successful appeal of his first trial by decreasing the portion of his sentence that was suspended, lengthening his prison time.

¶26 This Court generally will review a criminal sentence only for legality. Where a sentence is within the statutory parameters established by the legislature, this Court will generally affirm it. *State v. Allen* (1996), 278 Mont. 326, 334, 925 P.2d 470, 475. Punishing a person for exercising a constitutional right, however, is a basic due process violation. *State v. Baldwin* (1981), 192 Mont. 521, 525, 629 P.2d 222, 225. "Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *North Carolina* v. *Pearce* (1969), 395 U.S. 711, 725.

¶27 The *Pearce* Court set forth the following rule:

> [W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." *Pearce,* 395 U.S. at 726.

Otherwise, a presumption arises that a greater sentence has been imposed for a vindictive purpose - a presumption that must be rebutted by "objective information . . . justifying the increased sentence." *Texas v. McCullough* (1986), 475 U.S. 134, 142. The District Court had an obligation under *Pearce* to set forth the reasons for the increased sentence. *Pearce,* 935 U.S. at 726.

¶ 28 The *Pearce* rule, however, is quite limited. *Pearce* does not operate as a bar to more severe sentence on reconviction. The Supreme Court clearly stated in its opinion:

> We hold, therefore that neither the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction. A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's "life, health, habits, conduct and mental and moral propensities." Such information may come to the judge's attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources. The freedom of a sentencing judge to consider the

defendant's conduct subsequent to the first conviction in imposing a new sentence is no more than consonant with the principle . . . that a State may adopt the "prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime." *Pearce,* 395 U.S. at 723. Citation omitted.

In addition, in a later case, the Court noted that, the *Pearce* presumption was not designed to prevent the imposition of an increased sentence on retrial for some valid reason associated with the need for flexibility and discretion in the sentencing process, but was premised on the apparent need to guard against vindictiveness in the resentencing process. *Chaffin v. Stynchcombe* (1973), 412 U.S. 17, 25.

¶29 When the court suspended less time in the second sentence, it noted that the PSI showed that while Hubbel had signed up for many of the courses, he had not begun any of the courses, presumably due to overcrowding at the prison. The District Court set forth its reasons for suspending less time, commenting that both the original and the updated pre-sentence reports had been considered, and that while Hubbel had performed well in prison, the additional time was needed for his rehabilitation so that he could complete the ordered programs as well as receiving mental health counseling. The court also expressed concern that Hubbel continued to deny responsibility for his actions. The court felt that the increased time to receive mental health counseling and complete the ordered programs was necessary for the protection of society and for Hubbel's own rehabilitation.

¶30 It appears that the District Court reduced the amount of time to be suspended from his first sentence to his second sentence because Hubbel needed time to complete the various programs which the court had ordered. Suspending less time on the second sentence was not out of vindictiveness, but to insure that Hubbel had sufficient time to complete the various programs which the court had ordered he complete. The District Court's concern for Hubbel's rehabilitation was a constitutionally legitimate reason for suspending less time upon reconviction. We affirm the decision of the District Court.

¶31 **Issue 3. Whether the District Court abused its discretion when it ordered Hubbel to reimburse the costs of his court appointed counsel from his first trial.**

¶32 As a condition of partial suspension of his sentence, the court ordered, among other things, that Hubbel pay the costs of his court-appointed counsel. The total included payment for all three of his attorneys throughout these proceedings, including those who represented him in his initial trial and in his appeal to this Court overturning the verdict in

that trial. Hubbel argues that he should not be required to pay for the costs relating to the first trial and the appeal. Hubbel argues that requiring him to pay the costs of his counsel from his first trial impinges on his right to counsel and that this is punishment for successfully challenging his first conviction. We disagree.

¶33 The trial court has the authority to order Hubbel to reimburse costs of his court appointed counsel. This includes all costs related to his criminal defense. Section 46-8-113, MCA, provides in relevant part:

> 1. The court may require a convicted defendant to pay the costs of court-appointed counsel as a part of or a condition under the sentence imposed as provided in Title 46.

> 2. Costs must be limited to reasonable compensation and costs incurred by the court-appointed counsel in the criminal proceeding.

There is no limitation in the statute preventing a district court from requiring that all costs from the proceeding be paid by the defendant.

¶34 Hubbel's claim that this is further evidence that the District Court is punishing him for prevailing on appeal is unavailing. There is no evidence in the record to support his claim that the judge was acting out of vindictiveness in ordering him to pay the costs of court appointed counsel. It is clear that the District Court has the authority to order Hubbel to pay the costs of his court appointed counsel. This includes all costs of legal representation, not just those where he is unsuccessful. We affirm the decision of the District Court on this issue.

¶35 **Issue 4. Whether the District Court erred in failing to determine the appellant's inability to pay the costs of his court appointed counsel.**

¶36 Hubbel argues that the District Court should have held a hearing to determine whether he had the financial resources to pay the costs of his court appointed counsel. The statute requires that the District Court make an inquiry into Hubbel's financial resources to determine whether he had the ability to pay.

¶37 Section 46-8-113(3), MCA, provides:

> The court may not sentence a defendant to pay the costs of court-appointed counsel

unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take into account the financial resources of the defendant and the nature of the burden that payment of costs will impose.

¶38 Whether Hubbel had the ability to pay the costs of his representation is a significant question that the District Court should have inquired into, but did not. The statute requires a District Court to make an inquiry into the defendant's ability to pay before sentencing the defendant to payment of costs. Therefore, we remand this case back to the District Court for further proceedings and a determination of whether or not Hubbel had the ability to pay for the costs of his court appointed counsel.

¶39 Affirmed in part and remanded for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER