NO. 93-130

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

MARK DeBRUYCKER and
TAMMY DeBRUYCKER GILL,

     Plaintiffs and Appellants,

  -vs-

GUARANTY NATIONAL INSURANCE COMPANY,
a Colorado corporation, and
CROP HAIL MANAGEMENT,
a Montana corporation,

     Defendants, Respondents and
       Cross-Appellants.

FILED

SEP 12 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Ninth Judicial District,
             In and for the County of Teton,
             The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

     For Appellants:

          Dennis Patrick Conner, Attorney at Law, Great
          Falls, Montana (argued)

          Michael J. Best: Best Law Offices, Great Falls
          Montana

     For Respondents and Cross-Appellants:

          Kevin Meek (argued): Alexander, Baucus & Linnell,
          Great Falls, Montana

                        Submitted:   March 24, 1994

                         Decided:   September 12, 1994

Filed:

                           Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal and cross-appeal from the Ninth Judicial District Court involving a hail insurance dispute over a barley crop. The jury awarded brother and sister Mark DeBruycker and **Tammy** DeBruycker Gill (DeBruyckers) hail insurance contract damages of **$70,676.41** and punitive damages of $500,000 against Guaranty National Insurance (Guaranty) and $40,000 punitive damages against Crop Hail Management (Crop Hail) for violating the Montana Unfair Trade Practices Act (UTPA). The District Court, pursuant to § 27-1-221(7)(c), MCA, subsequently reduced the punitive damage award against Guaranty from $500,000 to $50,000 and set aside the punitive damage award against Crop Hail.

We reorganize and restate the issues as follows:

1. Did the District Court err by denying Guaranty and Crop Hail's motions for summary judgment and a directed verdict on the issue of punitive damages?

2. Did the District Court violate the applicable standard of review when the court reduced the jury's punitive damages award against Guaranty and Crop Hail by basing that decision on its own factual findings which were contrary to the jury's special verdict form?

3. Did the **District** Court err by finding that Crop Hail was not an "insurer" subject to punitive damages under the UTPA?

The DeBruyckers own 1,470 acres of land near Bynum, Montana. In 1988, Guaranty sold the DeBruyckers an insurance policy insuring **1,389.9** acres of barley against hail loss. The remaining 90 acres were insured by Glenn Falls Insurance Company (Glenn Falls).

Guaranty charged the DeBruyckers a total premium of $33,627. The crop hail insurance policy provided coverage for crop damage

caused by hail which reduced **"crop** yield."  The  policy  defined **"crop yield"** as:

> The production per acre that the insured crop would reasonably be expected to produce at harvest.  The production per acre is usually expressed in terms of bushels, pounds, tonnage, etc.

Barley yield is measured by weight.  Under the policy, a payable loss existed if the barley suffered a reduction in yield (weight) exceeding 5 percent as a result of hail.

Two hail storms hit the **DeBruyckers'** insured acres during the summer of 1988.  After the first hail storm, Crop Hail sent an adjuster to examine the loss.  The adjuster looked at a **90-acre** field and decided to defer its loss adjustment until the crops matured.  The adjuster assured Mark that the boot-tied barley would be calculated in the loss.  Among other things, hail can cause boot-tied damage if hail hits the barley while the barley is still growing.  The hail causes the head to deform, resulting in missing and underdeveloped kernels.  Normally, boot-tied kernels will weigh less than normal kernels.

After the second hail storm, two Crop Hail adjusters were sent by their managing general agent, Guaranty, to the DeBruycker farm to adjust the loss.  The adjusters met Mark and his father Lloyd **DeBruycker** at the **90-acre** field.  One of the adjusters started a loss count and the **DeBruyckers** were satisfied with the process he was instituting.  However, the second adjuster then took over the adjustment, contending that boot-tied heads actually resulted in larger barley kernels.  Lloyd disagreed and showed both adjusters the smaller and missing kernels on the boot-tied heads.  The

3

adjustment was then terminated.

The second adjuster wrote in his report that: **"[d]epending** on the count I feel [the DeBruyckers] may have a loss, but . . . [I] would like to have dropped [Lloyd] in his tracks. He's a real **o-hole."** The following week, Guaranty through Crop Hail claimed that the parties were **"so** far **apart"** on the adjustment that they were enacting the arbitration provision of the contract.

To represent their interests, Guaranty appointed a representative, and the DeBruyckers appointed friend and fellow farmer, David Van Horn (Van Horn). The two representatives then appointed an umpire. At the arbitration adjustment, Guaranty's representative apparently mentioned to Van Horn that boot-tied hail damage was not covered as a loss by the **"book."** Van Horn later testified in court that he had never formally adjusted a hail loss and believed Guaranty's representative, not realizing until just before trial that no **"book"** ever existed.

Guaranty and Van Horn agreed that the DeBruyckers suffered an 8.6 percent loss on 316 acres. The payable loss amounted to $3,418. After the arbitration, Guaranty's representative forwarded to Crop Hail a bill for his services, including a line item entitled "Peace of Mind **???.??"** which requested an unspecified amount.

Subsequently, the DeBruyckers discovered that the loss was actually on 90 acres--not 316 acres--and the 90 acres were actually insured by Glenn Falls instead of Guaranty. When the adjuster from Glenn Falls adjusted the **90-acre** field, he found a 28.7 percent

4

reduction in yield, but unlike Guaranty and Crop Hail, he credited the DeBruyckers for hail damaged boot-ties.

A few days later, Mark wrote to Crop Hail and requested the arbitration counts and results. Crop Hail only sent an arbitration proof of loss form because the counts were not documented.

One month later Mark and Lloyd met with Crop Hail's branch manager. They presented photographs and other evidence that the adjustments to the fields were unfair and requested that the matter be reopened. Crop Hail denied their request and denied their claim on November 29, 1988. In December 1988, Crop Hail sent the DeBruyckers a check for $3,418 with a restrictive endorsement which stated:

> PROPER ENDORSEMENT HEREOF CONSTITUTES FULL SATISFACTION, COMPROMISE AND INDEMNITY FOR ALL CLAIMS AND DEMANDS FOR LOSS AND DAMAGE UP TO AND INCLUDING THE TIME OF ADJUSTMENT ON 8/26/88 TO CROPS INSURED UNDER POLICY NO. 25-884-12511-88.

The cover letter with the check stated that the check was a showing of good faith. The DeBruyckers refused to sign the check.

The DeBruyckers subsequently hired legal counsel who twice wrote to Crop Hail about the inconsistencies between Crop Hail's 8.6 percent adjustment, and the Glenn Falls adjustment of 28.7 percent, and Crop Hail's failure to find a payable loss on the other fields. Crop Hail refused to reopen the case.

The DeBruyckers ultimately brought suit against Crop Hail and Guaranty on the contract claim and also under a separate UTPA claim for punitive damages. The District Court denied Crop Hail and Guaranty's motions for summary judgment on the unfair practices and

5

punitive damages issues. The case went to trial on January 14, 1991, and the court denied Crop Hail and Guaranty's motions for a directed verdict on the issues of unfair practices and punitive damages.

The jury found for the DeBruyckers on all counts on the special verdict form and assessed contract damages of $70,676.41, as well as punitive damages of $500,000 against Guaranty and $40,000 against Crop Hail. Later, the District Court, pursuant to § 27-1-221(7)(c), MCA, reduced the punitive damage award against Guaranty to $50,000 and set aside the punitive damage award against Crop Hail.

Crop Hail and Guaranty cross-appeal the court's denial of their motions for summary judgment and a directed verdict. The DeBruyckers appeal the court's reduction and setting aside of the jury's punitive damage awards.

I

Did the District Court err by denying Guaranty and Crop Hail's motions for summary judgment and a directed verdict on the issue of punitive damages?

Guaranty and Crop Hail argue that since the District Court found, after trial, as a matter of law, that a "reasonable basis for contesting the [DeBruyckers'] claim" existed, the District Court previously erred by not granting Guaranty and Crop Hail summary judgment or--in the alternative--a directed verdict on the issue of punitive damages. Guaranty and Crop Hail correctly allege that if they had a "reasonable basis" to contest the claim, then the DeBruyckers had no independent cause of action for punitive

6

damages under § 33-18-242, MCA.

"The 'reasonable basis' for denying a claim is a defense to liability under § 33-18-242, MCA." Dean v. Austin Mutual (Mont. 1994), 869 P.2d 256, 258, 51 St.Rep. 102, 103. We recently concluded that

> reasonableness is generally a question of fact; therefore, it is for the trier of fact to weigh the evidence and judge the credibility of the witnesses in determining whether the insurer had a "reasonable basis" for denying a claim. This is not a determination that can be made "as a matter of law" . . . .

Dean, 869 P.2d at 258.

In this case, the District Court properly denied Guaranty and Crop Hail's motions for summary judgment and directed verdict. The court properly allowed the jury to decide whether Guaranty and Crop Hail had a "reasonable basis" to deny the DeBruyckers' claim.

II

Did the District Court violate the applicable standard of review when the court reduced the jury's punitive damages award against Guaranty and Crop Hail by basing that decision on its own factual findings which were contrary to the jury's special verdict form?

The jury, by special verdict, found that Guaranty and Crop Hail violated UTPA provisions found at § 33-18-201, MCA, and that Guaranty and Crop Hail had no reasonable basis in law or fact for contesting the DeBruyckers' claim. Section 27-1-221, MCA, provides that reasonable punitive damages may be awarded when the defendant has been found guilty, by clear and convincing evidence, of actual fraud or actual malice. Here, the jury further found that there was clear and convincing evidence that both Guaranty and Crop Hail were guilty of actual malice and that punitive damages should be

7

assessed against both of them. The jury awarded the DeBruyckers $500,000 in punitive damages against Guaranty and $40,000 in punitive damages against Crop Hail.

Section 27-1-221(7)(c), MCA, requires a district court to review a jury's award of punitive damages, giving consideration to each of the following matters set forth at § 27-1-221(7)(b), MCA:

> (i) the nature and reprehensibility of the defendant's wrongdoing;
> (ii) the extent of the defendant's wrongdoing;
> (iii) the intent of the defendant in committing the wrong;
> (iv) the profitability of the defendant's wrongdoing, if applicable:
> (v) the amount of actual damages awarded by the jury:
> (vi) the defendant's net worth:
> (vii) previous awards of punitive or exemplary damages against the defendant based upon the same wrongful act;
> (viii) potential or prior criminal sanctions against the defendant based upon the same wrongful act; and
> (ix) any other circumstances that may operate to increase or reduce, without wholly defeating, punitive damages.

The court must "clearly state [its] reasons for increasing, decreasing, or not increasing or decreasing the punitive damages award . . . in findings of fact and conclusions of law, demonstrating consideration of each of the factors listed in subsection (7)(b)." Section 27-1-221(7)(c), MCA.

In its review of the jury's punitive damages award pursuant to § 27-1-221(7)(c), MCA, the District Court concluded that Guaranty and Crop Hail had not violated the provisions of § 33-18-201, MCA, on which the jury received instructions. The court further concluded that Guaranty and Crop Hail had a reasonable basis to deny the DeBruyckers' claim. These conclusions directly contradicted the findings of the jury described above. Based upon

8

its findings and conclusions, the District Court reduced the jury's award of punitive damages against Guaranty to $50,000 and struck the award of punitive damages against Crop Hail.

Section 27-1-221(6), MCA, provides that "[l]iability for punitive damages must be determined by the trier of fact, whether judge or jury." Here, the District Court, under what the court perceived to be authorized under § 27-1-221(7)(c), MCA, overturned several findings of the trier of fact. We conclude that this exceeded the scope of review allowed to the court under the statute.

The DeBruyckers invoked their right to demand a jury trial pursuant to Rule 38(b), M.R.Civ.P. To interpret § 27-1-221(7)(b), MCA, as allowing the court to reverse issues of underlying liability previously submitted to and decided by the jury would interfere with the jury as trier of fact deciding such issues.

Although the list enumerated at § 27-1-221(7)(b), MCA, may, as in this case, appear to include some of the same or similar issues as those put to a jury in the case, we conclude that the court's review pursuant to subsection (7)(c) must be conducted without contradicting findings of fact made by the jury. In other words, we conclude that the District Court was bound by the jury's determination of facts on all issues which had been presented to the jury. Section 27-1-221(7)(c), MCA, only empowers the court to evaluate the amount of the award of punitive damages in light of the factors enumerated under subsection (7)(b), and to make findings of fact and conclusions of law as to its reasons for

9

increasing, decreasing, or letting stand the amount of the punitive damages award. It does not open the door for reversal of jury findings on underlying issues of liability.

We hold that the District Court committed reversible error when it overturned the above-described jury findings on **liability**. We therefore remand so that the District Court may conduct a proper review of the amount of punitive damages pursuant to § 27-1-221(7)(c), MCA.

### III

Did the District Court err by finding that Crop Hail was not an "insurer" subject to punitive damages under the UTPA?

The **District** Court struck the punitive damages award against Crop Hail because it found that Crop Hail was not an "insurer" subject to punitive damages under the UTPA. This Court in O'Fallon v. Farmers Ins. Exchange (Mont. 1993), 859 P.2d 1008, 1015, 50 St.Rep. 1022, 1027, held that:

> individuals, as well as insurers! are prohibited from engaging in the unfair trade practices set forth in § 33-18-201, MCA and . . . when an individual breaches the obligations imposed by that statute, the claimant who is damaged by that breach has a common law cause of action against that individual.

We further stated:

> It is clear from the language of § 33-18-201, MCA, that not just insurers, but also claims adjusters, are prohibited from engaging in acts that are prohibited [by this statute].

O'Fallon, 859 P.2d at 1014.

Crop Hail recognizes that a common law claim may be brought against claims adjusters and their companies. However, Crop Hail correctly contends that the common law cause of action against an

10

individual requires a different standard of proof.  See Klaudt v.

Flink (1983), 202 Mont. 247, 253-54, 658 P.2d 1065, 1068.  Since

the DeBruyckers did not submit proof on the common law standard,

Crop Hail argues that no cause of action existed against Crop Hail.

In spite of Crop Hail's argument, we note that Crop Hail never

claimed that it was not an insurer.  Crop Hail did not raise the

issue in its pretrial pleadings, nor did it raise the issue in the

pretrial order.  Crop Hail also failed to object to the jury

instructions and the special verdict form based on the argument

that it was not an "insurer" under the UTPA.  Moreover, Crop Hail

did not argue that the common law standard of Klaudt applied in

this case.

We have "long adhered to the rule that an instruction given

without an objection becomes the 'law of the case.'"  Nicholson v.

United Pacific Ins. Co. (1985), 219 Mont. 32, 38, 710 P.2d 1342,

1346.  Since Crop Hail acquiesced to the jury instructions, the

instructions became the law of the case.  Crop Hail's consent to

the instructions precludes it from arguing that it was not an

"insurer" to avoid an assessment of punitive damages.  On that

basis, we determine that the District Court erred by concluding

that Crop Hail was not an insurer.

We affirm on Issue I, reverse on Issue III, and reverse and

remand on Issue II.  On remand, we direct the District Court to

conduct a review pursuant to § 27-1-221(7)(c), MCA, consistent with

this opinion, to determine the amount of punitive damages.  If the

judge who decided this case does not hear the remand, then the

11

succeeding judge must, after reviewing the record, decide the amounts of the punitive damage awards.

John Conway Harrison
Justice

We concur:

J. A. Turnage
Chief Justice

Karla M. Gray

Justices

Justice Terry N. **Trieweiler** specially concurring.

I concur with the result of the majority opinion. However, I conclude that the analysis of issues set forth in that opinion is deficient in several respects.

The issues raised by the parties on appeal were:

1. Was there sufficient evidence in support of the plaintiffs' claims to withstand the defendants' motions for summary judgment and a directed verdict, and to affirm the jury's findings in favor of the plaintiffs?

2. If the answer to the preceding question is in the affirmative, could the jury's findings be set aside under the guise of statutory review provided for in § 27-1-220, MCA?

The issues raised by the parties require an analysis of our standard of review from denial of motions for summary relief, and our standard of review of a jury's findings. However, there is no such analysis in the majority opinion. Resolution of the first issue also requires some discussion of what evidence was presented to support the jury's findings and to justify denial of defendants' motions. Neither does the majority's opinion include **any** discussion of that nature. Although the opinion necessarily infers that the jury's findings were supported by substantial evidence, nowhere does it say so.

In response to Issue I, the majority infers that whether there is a **"reasonable** basis" for denying a claim is generally a question of fact, and therefore, that issue was properly submitted to the

13

jury. However, there is no explanation why that general rule applies to the facts in this case.

In its consideration of Issue II, the majority concludes that the District Court erred by entering findings inconsistent with the jury's findings. However, that is not always true. The majority opinion fails to distinguish when it is appropriate for a district court to enter judgment notwithstanding the verdict.

I conclude, after review of the record, that there was substantial evidence to support the jury's findings that defendants violated the Unfair Trade Practices Act found at § 33-18-201 through -242, MCA, and were guilty of actual malice in violation of § 27-1-221, MCA. Therefore, I concur with the majority's conclusion that the District Court correctly denied defendants' motions for summary judgment and a directed verdict, and that the District Court erred by entering findings of fact inconsistent with those of the jury.

I also concur with the majority's conclusion that Crop Hail Management waived any objection to suit under § 33-18-242, MCA, by raising that issue for the first time on appeal.

_____
Justice

Justice William E. Hunt, Sr., joins in the foregoing special concurrence.

_____
Justice

14

September 12, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Dennis Patrick Conner
Attorney at Law
P.O. Box 3028
Great Falls, MT 59403-3028

Michael J. Best
Best Law Offices
P.O. Box 2114
Great Falls, MT 59403

Norman L. Newhall & Kevin C. Meek
Alexander, Baucus & Linnell, P.C.
P.O. Box 2629
Great Falls, MT 59403

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy