No. 02-630

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 297

MARIE DEONIER & ASSOCIATES,

          Plaintiff and Appellant,

   v.

PAUL REVERE LIFE INSURANCE CO.,

          Defendant, Respondent and Cross-Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                    In and for the County of Yellowstone, Cause No. DV 95-759,
                    The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

          For Appellant:

                    L. B. Cozzens, Paul M. Warren, Cozzens, Warren & Harris, Billings, Montana

          For Respondent:

                    James L. Jones, Robert L. Sterup, Kyle A. Gray, Holland & Hart, Billings, Montana

Submitted on Briefs: September 4, 2003

Decided: October 26, 2004

Filed:

_____
                          Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1     This matter originally came before this Court in *Marie Deonier & Assocs. v. Paul Revere Life Ins. Co.,* 2000 MT 238, 301 Mont. 347, 9 P.3d 622 (*Deonier I*).  In that appeal, we reversed the District Court's grant of summary judgment in favor of Paul Revere Life Insurance Company (Paul Revere) and against Marie Deonier & Associates (Deonier).  At issue was Deonier's claim that Paul Revere breached its fiduciary duty owed to her as its agent.  We concluded the claim involved issues of material fact precluding summary judgment.

¶2     Upon remand, the District Court conducted a jury trial on Deonier's claim that Paul Revere breached its fiduciary duty to inform Deonier of the risk of litigation associated with a policy she sold on Paul Revere's behalf.  At the conclusion of trial, the jury returned a verdict in favor of Deonier and against Paul Revere in the amount of $150,000 in compensatory damages for emotional distress and $1,000,000 in punitive damages. Thereafter, the District Court reviewed the award of punitive damages and, pursuant to § 27-1-221, MCA, reduced the award to $375,000.

¶3     Deonier now appeals the District Court's reduction of the jury's punitive damages award.  Deonier further claims that the District Court erred in failing to increase the award in light of Paul Revere's alleged discovery abuses and that the Court erred in denying Deonier's motion for sanctions.

¶4     Paul Revere cross-appeals, claiming that the District Court erred in denying its Rule 50(a), M.R.Civ.P., motion for judgment as a matter of law and its motion for a new trial.

¶5     We reverse the District Court's reduction of the punitive damages and reinstate the jury's verdict.

2

¶6   We address the following issues on appeal:

¶7   1. Did the District Court err in denying Paul Revere's Rule 50(a), M.R.Civ.P., motion for judgment as a matter of law on Deonier's claim for breach of fiduciary duty?

¶8   2. Did the District Court err in denying Paul Revere's Rule 50(a), M.R.Civ.P., motion for judgment as a matter of law on Deonier's claim for punitive damages?

¶9   3. Did the District Court err in reducing the jury's punitive damage award from $1,000,000 to $375,000?

¶10   4. Did the District Court err in failing to increase the punitive damage award given Paul Revere's alleged discovery abuses?

¶11   5. Did the District Court err in denying Deonier's motion for sanctions?

¶12   6. Did the District Court give err in failing to grant Paul Revere a new trial?

FACTUAL AND PROCEDURAL BACKGROUND

¶13   We review only the facts necessary to address the relevant issues herein.  For a more detailed factual and procedural background, see *Deonier I*.

¶14   In *Deonier I*, this Court reversed the District Court's grant of summary judgment and remanded to resolve the factual dispute of whether Paul Revere knew or should have known that its potential use of the *Forman* defense created a risk of litigation and risk of pecuniary loss to Deonier as a result of the policy she sold on Paul Revere's behalf.  *See Massachusetts Casualty Ins. Co. v. Forman* (5th Cir. 1975), 516 F.2d 425.  The *Forman* defense was a strategy employed by Paul Revere where they asserted a legal defense to the incontestability clause in its policy.  The defense was based on its definition of "sickness" which excluded disabilities that manifested themselves prior to the issue date of the policy.  We also stated that Deonier was entitled to a trial on her punitive damages claim.  On remand, Deonier

3

conducted discovery in an attempt to determine the extent to which Paul Revere had knowledge that it intended on using the *Forman* defense to deny coverage to its insureds in Montana and to what extent Paul Revere knew that the use of such defense exposed its agents or brokers to pecuniary loss from lawsuits.

¶15    The case was presented to a jury from April 9, 2002, to April 18, 2002, after which the jury awarded Deonier $150,000 in compensatory damages and $1,000,000 in punitive damages.  As required under § 27-1-221, MCA, the District Court reviewed the jury's punitive damages award and, subsequent to its review, reduced the punitive damages award to $375,000.  On June 18, 2002, the District Court entered judgment in favor of Deonier in the amount of $528,269.34, said amount including the above compensatory and punitive damages as well as Deonier's costs.

¶16    On August 6, 2002, Deonier moved for relief under Rule 60(b)(3), M.R.Civ.P.  The District Court denied that motion on September 3, 2002.

¶17    Deonier now appeals the District Court's reduction of her punitive damages award, the District Court's refusal to increase the punitive damages award in light of Paul Revere's discovery activities and the District Court's denial of her request for sanctions.  Paul Revere cross-appeals the District Court's denial of its post trial motions.  We will first address Paul Revere's cross-appeal of the denial of its post trial motions.

STANDARD OF REVIEW

¶18    This Court's standard of review of appeals from district court orders granting or denying motions for judgment as a matter of law is identical to that of the district court. *Durden v. Hydro Flame Corp.*, 1998 MT 47, ¶ 22, 288 Mont. 1, ¶ 22, 955 P.2d 160, ¶ 22 (citing *Ryan v. City of Bozeman* (1996), 279 Mont. 507, 510, 928 P.2d 228, 229-30).

4

Judgment as a matter of law is properly granted only when there is a complete absence of any evidence which would justify submitting an issue to a jury and all such evidence and any legitimate inferences that might be drawn from that evidence must be considered in the light most favorable to the party opposing the motion. *Bevacqua v. Union Pac. R.R. Co.,* 1998 MT 120, ¶ 46, 289 Mont. 36, ¶ 46, 960 P.2d 273, ¶ 46; *Durden,* ¶ 21 (citation omitted). For a failure to grant a new trial, this Court reviews the decision of the district court for abuse of discretion. *Durden,* ¶ 30.

## ISSUE 1

¶19     Did the District Court err in denying Paul Revere's Rule 50(a), M.R.Civ.P., motion for judgment as a matter of law on Deonier's claim for breach of fiduciary duty?

¶20     Paul Revere claims that, for Deonier to be successful in her breach of fiduciary duty claim, she was required to prove by substantial, credible evidence that Paul Revere knew or should have known prior to the sale of the policy to Kathryn Vestal (Vestal) that there was a likely risk that, 1) Paul Revere would invoke the *Forman* defense in Montana on a policy sold by Deonier, 2) that this Court would not follow the *Doettl* case but instead a minority view precluding the *Forman* defense, and 3) that Deonier would be sued along with Paul Revere and sustain a pecuniary loss. *See Doettl v. Colonial Life & Acci. Ins. Co.* (D. Mont. 1981), 505 F.Supp. 127. Further, Paul Revere claims that Deonier's knowledge that she could be sued for anything does not include the above risk and that Paul Revere knew or should have known this. Finally, Paul Revere argues Deonier did not prove causation, stating specifically that it was Deonier's burden to establish she would have acted differently if she had received a warning about the *Forman* defense. Paul Revere asserts that Deonier failed to present substantial and credible evidence to establish all of the above.

5

¶21     Paul Revere's purported authority for the above required proof is this Court's decision in *Deonier I* and *Restatement (Second) of Agency*, § 435 (1958), which provides:

> Unless otherwise agreed, it is inferred that a principal contracts to use care to inform the agent of risks of physical harm or pecuniary loss which, as the principal has reason to know, exist in the performance of authorized acts and which he has reason to know are unknown to the agent.

Based upon the above language in the Restatement and its Comments, this Court concluded in *Deonier I* that the proper analysis for the District Court to apply is "whether Paul Revere had knowledge that it might assert the *Forman* defense in order to deny coverage on a policy sold by Deonier; and, if so, that there was a risk Deonier would incur pecuniary loss, such as attorney fees, as a result of her unknowingly false or misleading statements concerning coverage provided by the policy." *Deonier I*, ¶ 30.

¶22     We again conclude that the above was the proper analysis to be applied, and thus disagree with Paul Revere that Deonier was required to present evidence to satisfy Paul Revere's suggested multi-tiered analysis. Simply put, if the jury was presented with evidence with which it could conclude that Paul Revere's act of failing to inform Deonier that it might invoke the *Forman* defense to deny coverage and as a result Deonier would suffer damages, then granting a Rule 50(a), M.R.Civ.P., motion for judgment as a matter of law would have been inappropriate.

¶23     Moreover, we agree with Deonier that, given the issue of breach of fiduciary duty before the jury, it is immaterial whether Paul Revere believed its actions were supported by the United States District Court opinion in *Doettl* or supported by a majority of states. As noted by Deonier, even if this Court had declared the *Forman* defense legal in Montana, if Paul Revere had knowledge that it might engage in conduct that created a risk of pecuniary

6

loss to Deonier, such knowledge gives rise to a duty to warn its fiduciary of the known risk. *Restatement (Second) of Agency*, § 435; *Deonier I*, ¶ 28.

¶24 We first note that this Court reversed the District Court in *Deonier I*, in part, because we concluded that the paper presented and published by Paul Revere's counsel in 1987 illustrated the company's awareness of the *Forman* defense, its contemplation of its use in Montana and its consequences, and as such, created a genuine issue of material fact concerning a breach of duty in this case. *See Deonier I*, ¶¶ 32-33. On remand, Deonier's counsel presented much of the language in this paper to the jury, including the following, read into the record by David J. Layden (Layden), Paul Revere's representative at trial and in-house attorney managing the litigation in Paul Revere's disability block.

> Accordingly, it is imperative that a company representative contact the agent/broker and obtain a written statement, preferably notarized, as to what took place during the application process. In order to obtain as unbiased a statement as possible, it is preferable that the interview take place before the insured or his attorney contacts the agent/broker. If the agent/broker "cannot remember" or refuses to give a statement, or admits that he knew of the insured's pre-existing disease but, "forgot" to put it down, defending against the insured's claim based on the *Forman* defense becomes more complicated.

> Clearly, the agent/broker should be advised to notify his errors and omissions carrier that he will be joined as a codefendant in any litigation. This alone may, help "refresh" his memory. In any event, further investigation should be conducted, including interviewing the insured, to see if there is evidence of possible collusion which would bring the agent/broker outside his scope of agency relationship with the company.

¶25 Based upon discovery documents produced by Paul Revere revealing at least eighteen occasions where Paul Revere utilized the *Forman* defense prior to utilizing it in Montana, Laden testified that Paul Revere was sued in fifteen of those cases, or 83% of the time Paul Revere utilized the *Forman* defense. Layden also testified that, of those fifteen times, agents were joined in the suit on three occasions, or in 20% of the cases.

7

¶26 Deonier also presented testimony from Vestal's counsel, Randy Bishop (Bishop). Bishop testified as to why he joined Deonier in the suit against Paul Revere.

> In this instance, looking at this policy, Katie was very clear to me to say, "No one ever explained this to me," that the word "sickness" would be used as an exclusion from coverage. I looked at the policy and it clearly was not identified as an exclusion, as I thought it should have been. But I also thought that the agents who sold the policy, if they knew about this tactic of using the word "sickness" as a weapon rather than just a definition to – a weapon to deny claims, if they knew about that, then they had an obligation to tell Katie before she spent money on this policy, because the other thing she told me was, . . . "I would never have bought it if I knew this was a company like this that I would be dealing with."
>
> So the way I looked at it was one of two things had to be true, either Ms. Deonier . . . knew about this definition of "sickness" and how it might be used, or [she] didn't. But either way, I needed to have them in there because if they did know about it, then I thought they probably owed Katie the money because they didn't tell her everything she needed to know when she bought it.

¶27 We thus agree with Deonier that, drawing all legitimate inferences that might be drawn from the above evidence, and considering it in a light most favorable to Deonier, there existed a legally sufficient evidentiary basis for a reasonable jury to find in favor of Deonier that Paul Revere breached its fiduciary duty. *Bevacqua*, ¶ 46; *Durden*, ¶ 21.

¶28 Given this conclusion, we hold that the District Court did not err in denying Paul Revere's Rule 50(a), M.R.Civ.P., motion for judgment as a matter of law.

ISSUE 2

¶29 Did the District Court err in denying Paul Revere's Rule 50(a), M.R.Civ.P., motion for judgment as a matter of law on Deonier's claim for punitive damages?

¶30 This Court's standard of review for a Rule 50(a), M.R.Civ.P., motion for judgment as a matter of law on punitive damages is the same as that noted above concerning such motions in regards to liability: it is properly granted only when there is a complete absence

8

of any evidence which would justify submitting an issue to a jury. All such evidence and any legitimate inferences that might be drawn from that evidence must be considered in the light most favorable to the party opposing the motion. *Sandman v. Farmers Ins. Exch.*, 1998 MT 286, ¶ 46, 291 Mont. 456, ¶ 46, 969 P.2d 277, ¶ 46; *Bevacqua*, ¶ 46; *Durden*, ¶ 21.

¶31 Montana's punitive damages statute, § 27-1-221, MCA, provides in part:

> (1) Subject to the provisions of 27-1-220 and this section, reasonable punitive damages may be awarded when the defendant has been found guilty of actual fraud or actual malice.
>
> (2) A defendant is guilty of actual malice if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and:
>
> > (a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or
> > (b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.
>
> . . . .
>
> (5) All elements of the claim for punitive damages must be proved by clear and convincing evidence. Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. It is more than a preponderance of evidence but less than beyond a reasonable doubt.
>
> (6) Liability for punitive damages must be determined by the trier of fact, whether judge or jury.

Thus, this Court will reverse the District Court's denial of Paul Revere's Rule 50(a), M.R.Civ.P., motion on punitive damages only if, viewing all evidence and any legitimate inferences that might be drawn from that evidence in a light most favorable to Deonier, there is a complete absence of any evidence which would justify submitting the issue of punitive damages to the jury.

¶32 Paul Revere contends that punitive damages were inappropriate as a matter of law

9

because it was entitled to assert any defense, including the *Forman* defense, that had a reasonable basis in the law. Revere points to § 33-18-242(5), MCA, which, as noted by this Court in *Deonier I*, provides a defense to an Unfair Trade Practices Act or bad faith action against an insurance company "if the insurer had a reasonable basis in law or in fact for contesting the claim . . ." *See Deonier I*, ¶ 27.

¶33   Paul Revere argues that § 33-18-242(5), MCA, considered in conjunction with the Doettl case and uncontradicted evidence at trial that the *Forman* defense was a well-established legal doctrine that Paul Revere had reason to believe would be held valid in Montana, should provide insulation from the higher standard of punitive damages, *i.e.*, clear and convincing evidence of actual fraud or malice. Paul Revere contends that it could not have possibly acted with "intentional disregard of a high probability of injury" to Deonier when at the time it failed to warn her about the *Forman* defense, not a single broker had been sued in a *Forman* case, the majority of the courts to address the defense found it valid, when the sole case in Montana–*Doettl*–agreed, and when this Court had a practice of adopting precedent of the Montana federal courts and of following majority insurance rules. Paul Revere maintains this is a denial of due process.

¶34   Deonier retorts that evidence demonstrated Paul Revere had contemplated the use of the *Forman* defense in Montana since 1987, and that, by 1994, when Paul Revere first used the *Forman* defense in Montana, it knew that selling agents had been sued in at least 20% of the previous lawsuits and that it nevertheless refused to inform its agents of the risk of pecuniary loss should Paul Revere decide to assert such defense. Deonier also testified at trial that she would not have sold the policy had she known that Paul Revere would take the position that its definition of "sickness" means the same thing as an exclusion by name or

10

specific description.

¶35 Deonier also points to the language in the 1987 article by Paul Revere's counsel wherein it states: "Clearly the agent/broker should be advised to notify his errors and omissions carrier that he will be joined as a co-defendant in any litigation. This alone may help 'refresh' his memory." Deonier contends that this is evidence from which the jury could conclude that Paul Revere intended to use the threat of being sued to "refresh" the agent's recollection concerning any alleged misrepresentations of the insured – evidence upon which the jury could conclude that Paul Revere was guilty of actual malice and/or fraud.

¶36 Based on the above evidence alone, we cannot conclude that there is a complete absence of any evidence which would justify submitting the issue of punitive damages to the jury. We further conclude that the above evidence supports the notion that Paul Revere was not denied due process. We thus conclude that the District Court did not err in denying Paul Revere's Rule 50(a), M.R.Civ.P., motion for judgment as a matter of law on punitive damages.

ISSUE 3

¶37 Did the District Court err in reducing the jury's punitive damage award from $1,000,000 to $375,000?

¶38 We review a district court's decision to reduce, increase or affirm the jury's verdict regarding punitive damages to determine whether the district court abused its discretion. *See Dees v. American Natl. Fire Ins. Co.* (1993), 260 Mont. 431, 449, 861 P.2d 141, 152. A district court's discretion to increase or decrease a jury's verdict is not unlimited and must be supported by the statutorily prescribed criteria, by findings of fact which are supported by substantial evidence, and by findings of fact which are not inconsistent with findings that

11

are implicit in the jury's verdict. *See DeBruycker v. Guaranty Natl. Ins. Co.* (1994), 266 Mont. 294, 300, 880 P.2d 819, 822.

¶39 This Court reviews a district court's findings made pursuant to § 27-1-221, MCA, based upon the three-part test set forth in *Interstate Prod. Credit Assn. v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287, to determine whether they are clearly erroneous. To determine whether the District Court's findings are clearly erroneous, this Court will first review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence we will determine if the trial court has misapprehended the effect of the evidence. *DeSaye*, 250 Mont. at 323, 820 P.2d at 1287. Third, if substantial evidence exists and the effect of the evidence has not been misapprehended, this Court may still find that a finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *DeSaye*, 250 Mont. at 323, 820 P.2d at 1287.

¶40 This Court has defined substantial credible evidence as "evidence which a reasonable mind might accept as adequate to support a conclusion." *Sandman*, ¶ 40. We have stated:

> The evidence may be inherently weak and conflicting, yet it may still be considered substantial. It is well established that if the evidence is conflicting, it is within the province of the jury to determine the weight and credibility to be afforded the evidence. Finally, upon reviewing a jury verdict to determine if substantial credible evidence exists to support the verdict, this Court must view the evidence in the light most favorable to the prevailing party.

*Sandman*, ¶ 40.

¶41 Deonier argues that the District Court's findings made pursuant to § 27-1-221(7)(c), MCA, are directly inconsistent with the findings implicit in the jury's verdict and are not

12

supported by substantial evidence, and are thus clearly erroneous.

¶42  Said statute requires a district court to review a jury's award of punitive damages, giving consideration to each of the matters listed in § 27-1-221(7)(b), MCA.  A district court is then required to clearly state its reasons for increasing, decreasing, or not increasing or decreasing the award, demonstrating consideration of each of the factors listed in subsection (7)(b).  Said subsection contains the following factors:

> (i)  the nature and reprehensibility of the defendant's wrongdoing;
> (ii)  the extent of the defendant's wrongdoing;
> (iii)  the intent of the defendant in committing the wrong;
> (iv)  the profitability of the defendant's wrongdoing, if applicable;
> (v)  the amount of actual damages awarded by the jury;
> (vi) the defendant's net worth;
> (vii) previous awards of punitive or exemplary damages against the defendant based upon the same wrongful act;
> (viii)  potential or prior criminal sanctions against the defendant based upon the same wrongful act; and
> (ix)  any other circumstances that may operate to increase or reduce, without wholly defeating, punitive damages.

¶43  The District Court presented a lengthy analysis of the above statutory criteria to support its decision to reduce the jury's punitive damages award.  The following is a summarization of the District Court's significant findings and conclusions relating to the above factors.

### I.  The Nature and Reprehensibility of the Defendant's Wrongdoing

¶44  The District Court found that Paul Revere erred in its interpretation of Montana law and in the application of Montana law to its issued disability insurance policy.  Although the District Court acknowledged that the jury thought Paul Revere was remiss in failing to warn Deonier of the risk of being sued if Paul Revere decided to use the *Forman* defense, the District Court found that the foreseeability of the events leading to the suit against Deonier

13

were not so clear that one could reasonably conclude, whether in 1987, 1991 or 1994, that Paul Revere intentionally and purposefully set out to wrongfully harm Deonier or any other insurance broker similarly situated. The District Court concluded that Deonier's suit against Paul Revere had its genesis in the interaction of two wrongs: the first being Paul Revere's error in its interpretation of Montana law; the second being Vestal's omission of material information from the application. According to the Court, it was the interaction of these two wrongs that brought about the events of this case, with Deonier caught in the middle. The District Court also noted that Paul Revere honored disability claims that were clearly related to conditions noted on the insured's application.

¶45    The District Court thus concluded that the jury was given no evidence to compare the reprehensibility of Paul Revere's conduct to the reprehensibility of others in punitive damages cases and, basing its opinion on over thirty years of legal experience, concluded that the degree of reprehensibility of Paul Revere in this case was substantially less egregious than the conduct of others giving rise to punitive damages.

## II.   The Extent of Paul Revere's Wrongdoing

¶46    The District Court concluded that the extent of Paul Revere's wrongdoing was not great, finding that the frequency of cases like this are but a few nationwide, this being the first in Montana, and that it takes the conjunction of Paul Revere's wrong and at least Paul Revere's justifiable suspicion of the insured's duplicity before such scenario as that at bar arises.

## III.   The Intent of Paul Revere in Committing the Wrong

¶47    The District Court concluded that, while Paul Revere denied the insured's claim based upon an arguable legal position, that it was not exactly a laudable position in view of the

14

spirit of the law. The District Court deduced that one must logically conclude that Paul Revere's intent was to avoid having to prove a fraudulent misrepresentation and simply argue that pre-existing conditions not revealed on the application are simply not covered by definition.

### IV.   The Profitability of Paul Revere's Wrongdoing

¶48     The District Court concluded that Paul Revere's presence in Montana is insignificant compared to its presence nationwide, and that anything occurring in Montana has little effect on Paul Revere's profits as a national company.

### V.  The Amount of Actual Damages Awarded by the Jury

¶49     The District Court concluded that there was not much evidence to support the $150,000 awarded by the jury for emotional distress, and that, compared to other emotional distress cases, the verdict was higher, by a factor of ten, than the Court would have expected.

¶50     The District Court found that, if there is a 5:1 ratio that is at or near the permissible limit of punitive damages based on the U.S. Constitution, punitive damages in excess of $750,000 (5 x $150,000 = $750,000) would be constitutionally infirm.

### VI.  The Net Worth of Paul Revere

¶51     The District Court found that $1,000,000 was about 1/882 of Paul Revere's nationwide net worth and concluded that such award was a relatively small amount compared to $882,000,000.

### VII.  Previous Awards of Punitive Damages Against Paul Revere Based on the Same Wrongful Act

¶52     The District Court found that there had been no previous awards against Paul Revere or any other insurance agency for its use of the *Forman* defense.  The Court thus concluded

15

that Paul Revere was not on notice that its conduct could subject it to punitive damages.

## VIII. Other Circumstances

¶53    The District Court concluded that all of the witnesses at trial (plaintiff's and defendant's) seemed to be decent, honest, truthful, moral people, conscientiously performing the tasks of their employment and who testified without evil motive or intent. The District Court also noted that the purpose of punitive damages is to make an example of and to punish a defendant, or "[i]n other words, the goal is to modify the behavior of the defendant." The District Court thus concluded that, as Paul Revere's conduct was modified by this Court's decision in *Deonier I*, there was no longer any behavior to modify and there has not been for almost two years.

¶54    Given the foregoing findings and conclusions, the District Court ordered that the jury's punitive damages award of $1,000,000 be reduced to the sum of $375,000.

¶55    Deonier first responds by arguing that many of the factors upon which the District Court mitigated Paul Revere's responsibility have little or nothing to do with the jury's award of punitive damages in this case, but rather, are pertinent instead to Vestal's claims. Deonier notes that the issue tried in this case was whether Paul Revere should be punished for failing to warn its agents of the risk that they would suffer pecuniary loss as a result of being sued if Paul Revere chose to utilize the *Forman* defense in denying an insured's claim. Deonier argues that the issues of whether Vestal committed fraud, whether Paul Revere voluntarily paid some claims or even whether Paul Revere based its actions on a good faith understanding of then-current law, are irrelevant to the question of whether Paul Revere breached its fiduciary duty to warn Deonier of the risk of pecuniary loss, the very issue upon which the jury based its award of punitive damages.

16

¶56    Deonier contends that what the jury considered, but the District Court did not, was the undisputable fact that Paul Revere always knew that its use of the *Forman* defense would result in its agents being sued.  Deonier refers to evidence placed before the jury that, in 1987, Paul Revere's corporate counsel presented and published a paper illustrating the company's level of awareness of the *Forman* defense and its consequences, *see Deonier I*, ¶ 32.

¶57    Deonier argues that, as the result of discovery abuses by Paul Revere, it was neither possible for the jury or the District Court to know the full extent of Paul Revere's wrongdoing. Deonier asserts, however, that notwithstanding Paul Revere's alleged discovery abuses, the available testimony and documentary evidence amply demonstrates that Paul Revere had 60,000 to 100,000 agents and/or brokers selling its policies, that Paul Revere never has and never will inform its agents of the *Forman* defense, that Paul Revere has never voluntarily defended nor indemnified an agent who was sued as a result of its use of the *Forman* defense, that Paul Revere continues to use the *Forman* defense, and that agents are being sued in at least 20% of the cases where litigation results from Paul Revere's use of the *Forman* defense.

¶58    Regarding the profitability of Paul Revere's wrongdoing, Deonier asserts that Revere *intends* to subject its agents to the risk of lawsuits because the *Forman* defense is very profitable for Revere.  Deonier alleges that if Paul Revere told its agents about the *Forman* defense, "they would not sell Revere's policies."  Deonier thus asserts that Paul Revere is not forthright and honest with its agents because it is profitable not to be.

¶59    While the District Court noted that Paul Revere had not previously been punished for its conduct, Deonier retorts that such fact does not equate to not being on notice that its

17

conduct could subject it to punitive damages. Deonier notes that the duty to warn an agent of a risk of a pecuniary loss has been a principle in the Restatement of Agency since 1935 and that the existence of a fiduciary duty owed by a principal to its agent has long been recognized in Montana. Citing *First Sec. Bank v. Gary* (1990), 245 Mont. 394, 399-401, 798 P.2d 523, 526-27, Deonier notes that it is also long-established Montana law that a principal's breach of the fiduciary duty gives rise to a claim of punitive damages.

¶60   Deonier also asserts that the District Court's evaluation of the credibility of the witnesses in its determination to reduce the jury's punitive damage award usurps the jury's function as the sole determiner of the credibility of witnesses, as guaranteed by the Montana Constitution. "Implicit in the jury's determination that Revere was liable for punitive damages was the *rejection* of the very testimony the [District Court] found to be truthful and forthright."

¶61   Deonier maintains that the District Court erred in concluding that a $750,000 punitive damage award would be the largest that is constitutionally permissible. First, Deonier notes that the District Court considered only the $150,000 compensatory damage award while omitting the nearly $50,000 in fees, costs and interest already awarded, thus making the punitive damages award only slightly more than five times the total compensatory award. Second, Deonier contends that the United States Supreme Court specifically rejected any mathematical formula or test in *BMW of N. Am. Inc. v. Gore* (1996), 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809.

¶62   In conclusion, Deonier argues that the District Court not only lacked appropriate justification for reducing the jury's punitive damages award, but also that its findings are incompatible with the implicit findings made by the jury. *See DeBruycker*, 266 Mont. at 300,

18

880 P.2d at 822 (concluding that a district court's review pursuant to subsection 7(c) must be conducted without contradicting findings of fact made by the jury).

¶63    We agree with most of Deonier's contentions and conclude that the jury's verdict must be reinstated. Many of the factors on which the District Court mitigated Paul Revere's responsibility have little or nothing to do with the jury's award of punitive damages in this case. As previously noted, an aggregate of evidence was placed before the jury from which it could conclude that Paul Revere knew that its *Forman*-related conduct created a risk of pecuniary loss to any agents selling its disability policies, including the 1987 article published and presented by counsel to Paul Revere, the fact that agents have been sued in at least 20% of cases where litigation resulted from Paul Revere's use of the *Forman* defense, as well as testimony from Bishop explaining why he joined Deonier in Vestal's lawsuit against Paul Revere and why agents risk being joined in lawsuits in *Forman*-related cases, testimony from which the jury could draw legitimate inferences. *See Cartwright v. Equitable Life Assur. Socy. of the United States* (1996), 276 Mont. 1, 33, 914 P.2d 976, 996. As noted by Deonier, even if Paul Revere was successful in a majority of its *Forman*-related lawsuits, it still had a duty to inform its fiduciaries of known risks.

¶64    It has long been recognized in Montana and in the Restatement of Agency that the relationship between a principal and agent is a fiduciary relationship, with the concomitant duties therewith. *See Luke v. Gager*, 2000 MT 377 ¶ 49, 303 Mont. 474, ¶ 49, 16 P.3d 377, ¶ 49, *overruled on other grounds, In re Estate of Bradshaw*, 2001 MT 92, ¶ 15, 305 Mont. 178, ¶ 15, 24 P.3d 211, ¶ 15; *State ex rel., Eccleston v. Montana Third Judicial Dist. Court* (1989), 240 Mont. 44, 57, 783 P.2d 363, 371; *First Natl. Bank v. Sant* (1973), 161 Mont. 376, 382, 506 P.2d 835, 839. For the same reasons, we reject as inapplicable the District Court's

19

analysis that Paul Revere's conduct would not have been subject to Rule 11, M.R.Civ.P., sanctions. Such a finding does not support the reduction of punitive damages, considering the issue presented to the jury and the evidence upon which it based its decision did not involve Paul Revere's interpretation, misinterpretation or misapplication of Montana law.

¶65 We also agree with Deonier that the United States Supreme Court, in *BMW*, did not adopt any particular mathematical formula or ratio of compensatory to punitive damages. In *BMW*, the Supreme Court stated:

> We have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual *and potential* damages to the punitive award. Indeed, low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine. It is appropriate, therefore, to reiterate our rejection of a categorical approach.

*BMW*, 517 U.S. at 582, 116 S.Ct. at 1602, 134 L.Ed.2d at 830-31 (emphasis in original) (citation omitted).

We therefore do not agree with the District Court's application of a 5:1 ratio of punitive damages to compensatory damages as a determination of the constitutionality of the jury's award, and likewise disagree that any award of punitive damages above $750,000 would be constitutionally infirm.

¶66 Given the findings implicit in the jury's verdict, combined with the heightened duty intrinsic and elemental to a fiduciary relationship, the breach of which giving rise to punitive damages, we conclude that the jury's award of $1,000,000 in punitive damages is neither excessive nor constitutionally infirm. Implicit in the size of the award is the jury's belief that Paul Revere, at the very least, was indifferent to a high probability of a pecuniary loss to its

agents resulting from being joined in a lawsuit should Paul Revere decide to utilize the *Forman* defense to deny a disability claim. Also implicit in the jury's verdict is its judgment that Paul Revere's witnesses and evidence were less credible and/or less believable than Deonier's. We thus conclude that it was an abuse of discretion for the District Court, for the purpose of decreasing the jury's punitive damages award, to substitute its judgment for the jury's in determining that all of the witnesses were credible and honest. *Graf v. Continental W. Ins. Co.,* 2004 MT 105, ¶ 8, 321 Mont. 65, ¶ 8, 89 P.3d 22, ¶ 8 ("In our justice system, the jury serves as the final arbiter of the facts; charged with weighting the evidence, judging the credibility of the witnesses, and reaching a verdict in the case") (citing *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 625, 111 S.Ct. 2077, 2085, 114 L.Ed.2d 660, 676). *See also* Mont. Const. Art. II § 26.

¶67　Based upon the foregoing and viewing the evidence in a light most favorable to Deonier, we conclude that the District Court's findings are inconsistent with the findings implicit in the jury's verdict, and are thus clearly erroneous. We hold, therefore, that the District Court abused its discretion in reducing the jury's punitive damages award from $1,000,000 to $375,000 and order that the jury's verdict be reinstated.

ISSUE 4

¶68　Did the District Court err in failing to increase the punitive damage award given Paul Revere's alleged discovery abuses?

¶69　Deonier contends the District Court should have considered as the most important "other factor" Paul Revere's alleged systematic discovery misconduct and should have increased punitive damages accordingly. Deonier also contends that the District Court erred in denying her motion for sanctions based upon Paul Revere's alleged discovery abuses.

21

¶70 Generally the District Court is in the best position to determine good faith discovery efforts, and, absent an abuse of discretion, this Court will not disturb the trial court's determinations relating to discovery in general. *Durden*, ¶ 52 (citing *Lutz v. National Crane Corp.* (1994), 267 Mont. 368, 381, 884 P.2d 455, 462-63).

¶71 While both parties cite ample evidence in support of and in opposition to Deonier's argument, we note that the District Court made no finding of discovery abuse by Paul Revere and it is not this Court's prerogative to be a fact-finder. We note that the District Court stated that this was a much-contested case and that common civility suffered at times. The District Court noted that it has presided over all of the proceedings and was left with the impression that no fraud, misrepresentation or other misconduct occurred.

¶72 Given the foregoing, we cannot conclude that the District Court abused its discretion in not considering Paul Revere's alleged discovery misconduct in deciding whether to increase, decrease or let the punitive damages stand as determined by the jury.

ISSUE 5

¶73 Did the District Court err in failing to grant Paul Revere a new trial?

¶74 Paul Revere argues that the District Court gave erroneous, prejudicial jury instructions entitling it to a new trial. Paul Revere specifically challenges Instruction Nos. 9 and 10, which provide:

> INSTRUCTION NO. 9: You are instructed that, as between a principal and agent, the principal has a duty to use care to inform the agent of risks of physical harm or pecuniary loss which, as the principal has reason to know, exist in the performance of authorized acts and which the principal has reason to know are unknown to the agent.

> INSTRUCTION NO. 10: You are instructed that risk, as used here, means a chance of injury, damage or loss which Paul Revere had reason to know was unknown to Marie Deonier.

22

Specifically, Paul Revere argues that, based upon the law of the case as set forth in *Deonier I*, the District Court erred in defining risk as "a chance" of pecuniary loss to Deonier rather than instructing the jury that Deonier was required to prove that Paul Revere was aware of a "likely risk" that Deonier would be subject to pecuniary loss. Comment (a) to *Restatement (Second) of Agency,* § 435, cited by this Court in *Deonier I,* provides in part:

> The duty [in this section] may require not only warning the agent against physical dangers, as when the principal directs an agent to go to a place which is dangerous, but also disclosing facts which, if unknown, would be *likely* to subject the agent to pecuniary loss (emphasis supplied).

¶75 Paul Revere argues that, since all witnesses "agreed that there is always 'a chance' that a broker will get sued anytime a claim is denied, the trial court essentially directed a verdict against Revere." Citing *Federated Mut. Ins. Co. v. Anderson*, 1999 MT 288, ¶ 60, 297 Mont. 33, ¶ 60, 991 P.2d 915, ¶ 60, Paul Revere argues that it is entitled to jury instructions based upon the law of the case as established in *Deonier I*. In *Anderson*, this Court stated:

> The law of the case doctrine "expresses the practice of courts generally to refuse to reopen what has been decided." *In re Marriage of Scott* (1997), 283 Mont. 169, 175, 939 P.2d 998, 1001-02.
>
> > Where upon an appeal, the Supreme Court, in deciding a case presented, states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal.

*Anderson*, ¶ 60 (citing *Marriage of Scott*, 283 Mont. at 175-76, 939 P.2d at 1002.

¶76 In *Deonier I*, citing to Black's Law Dictionary, this Court defined "risk" as a "chance of injury, damage or loss." *Deonier I*, ¶ 30. We further stated:

> Accordingly, the analysis the District Court should have applied is whether Paul Revere had knowledge that it might assert the *Forman* defense in order

23

> to deny coverage on a policy sold by Deonier; and, if so, that there was a risk
> Deonier would incur pecuniary loss . . . ."

*Deonier I*, ¶ 30.

In other words, we concluded that the proper analysis to be applied by the District Court was whether, because of Paul Revere's *Forman*-related conduct, there was a chance of pecuniary loss to Deonier.

¶77    The District Court's jury instructions are thus consistent with the law of the case. We conclude, therefore, that the District Court did not give an erroneous jury instruction entitling Paul Revere to a new trial.

¶78    Paul Revere also claims it is entitled to a new trial because Deonier failed to prove that she suffered emotional distress, citing our case of *Sacco v. High County Indep. Press,* (1995), 271 Mont. 209, 896 P.2d 411. Deonier responds that in this instance she was claiming emotional distress as an element of damages resulting from Paul Revere's breach of fiduciary duty, not as an independent tort. Upon review of the record we conclude that there was sufficient evidence presented to the jury to support its award of emotional distress damages.

¶79    Finally, Paul Revere argues it is entitled to a new trial because the District Court erred in allowing Deonier's counsel to argue that Paul Revere should be punished for invoking the *Forman* defense in other states, contrary to the United States Supreme Court in *BMW*.

¶80    We note, however, that Deonier's counsel, in closing argument, reminded the jury of the Court's instruction: "Do not punish them for doing something in states where it's legal." Furthermore, Instruction No. 29 provides:

> In considering whether or not to award punitive damages, and the amount of
> any such award, you may not impose punitive damages on Defendant with the

24

intent of changing Defendant's lawful conduct on other states.

We conclude that the jury was not improperly instructed or otherwise informed to consider punishing Paul Revere based upon its legal conduct in other states.

¶81 The District Court is affirmed in part and reversed in part. This matter is remanded to the District Court with instructions to enter an order reinstating the jury's verdict on punitive damages.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON